Jack BELTON and John Crochet,
Plaintiffs-Appellees,

v.

FIBREBOARD CORPORATION, et
al., Defendants,

Pittsburgh Corning Corporation,
Defendant-Appellant.

No. 82–2446.

United States Court of Appeals,
Fifth Circuit.

Feb. 9, 1984.

Gordon R. Pate, Joe Michael Dodson, Beaumont, Tex., Don Martinson, Dallas, Tex., for defendant-appellant.

Walter Umphrey, Joseph R. Steele, Port Arthur, Tex., for Belton.

Marlin Thompson, Paul D. Henderson, Orange, Tex., for Crochet.

Before POLITZ, JOHNSON and WILLIAMS, Circuit Judges.

## PER CURIAM:

The threshold of this appeal concerns the admissibility of evidence of settlement agreements and the permissible boundaries of fair judicial comment to the jury.[1] Concluding that the trial court erred by admitting evidence of the amount of pre-trial settlements by a number of co-defendants, and by expressing its opinion on the amount of damages, we reverse and remand for a new trial.

### Background

The facts are undisputed. The plaintiffs, Jack Belton and John Crochet, filed this diversity action against appellant Pittsburgh Corning and fifteen other defendants, alleging that their exposure to asbestos-containing products manufactured by the defendants caused them to develop asbestos-related diseases. Prior to trial, Belton settled with fifteen defendants for $259,843.88; Crochet settled with thirteen defendants for $145,398.42. Pittsburgh Corning, the appellant here, was left as the only non-settling defendant.

At a pre-trial conference, the district court ruled that if Pittsburgh offered evidence of the plaintiffs' exposure to the products of the fifteen settling defendants, then the plaintiffs could explain to the jury that the other defendants were not at trial because they had theretofore settled out of court. Pittsburgh indicated, at a point during plaintiffs' opening statement, that it did intend to offer evidence of plaintiffs' exposure to the products of the previously settling defendants. The case proceeded to trial on a theory of strict liability. During opening statements, counsel for Belton and Crochet advised the jury that fifteen of the original defendants had settled prior to trial. The record reveals that the jury heard

---

1. Appellant also raises two procedural issues on appeal. First appellant urges that the trial court erred in admitting into evidence a Louisiana court's file in an unrelated case filed in 1961 against various manufacturers of asbestos products, listing appellant as a defendant at a time before it was ever in the business of manufacturing an asbestos product. Second, it is argued that the trial court erred in admitting a letter signed by Doctor Ervin J. Selikoff into evidence. The gravamen of that argument is that the letter was hearsay, not properly authenticated, and that its admission deprived appellant of its right of cross-examination. We have reviewed these contentions and find them to be without merit.

conflicting evidence as to the severity of Belton's and Crochet's injuries.

At the conclusion of the evidence, the trial court instructed the jury not to consider the settlement in its deliberations:

[T]he Court would charge you that you are not to permit the question of settlement of the Plaintiffs prior to the trial of this case, as to affect you in any way in regard to the liability that the Defendant has in regard to damages to the Plaintiff. You will not consider the settlement made by the Plaintiffs with other Defendants in any regard. But, the Court would instruct you that you are to give full consideration to the damages the Plaintiffs have sustained as if they were suing only the Defendant, Pittsburgh Corning Corporation. In other words, you will award the Plaintiffs the full damages which you find that they have sustained as a result of their asbestosis condition or their illness as a result of the exposure to asbestos products. You will not reduce or diminish or deduct any monies for any settlement that they might have made for other Defendants, because this will be a matter that the Court will be required to pass upon. Any amount that you would award the Plaintiffs as damages, the Court would have to make such adjustments and reduce the amount by the previous settlements.

These are matters to be handled by the Court. So, the fair way for you to award damages would be to award full damages to the Plaintiffs for all of the injuries that you find that they have sustained and all of the compensation that they are entitled to receive for their asbestosis illness, and not be effected or influenced in any way by any previous settlement. Or to make any deductions or reduce the amount by whatever settlement you might anticipate that they might have made, because this is a matter for the Court's consideration and for the Court's action and the Court, of course, will take care of that situation.

The jury returned a unanimous verdict awarding Belton $25,000 and Crochet $75,-000. The Court did not accept the verdict but instead asked:

THE COURT: Let me see it back Mr. Foreman, and members of the Jury, the Court would make this inquiry. Are you aware of the fact that the amount of damages that you have awarded the Plaintiffs, that the settlement with the other Defendants will have to be deducted from these amounts? In other words, if the amount of settlement made with the other defendants would exceed Twenty-Five Thousand Dollars as to Mr. Belton, or Seventy-Five Thousand Dollars as to Mr. Crochet, then the Plaintiff would not get any recovery at all from this Defendant. Are you aware of that fact?

THE FOREMAN: No, we were not.

THE COURT: And with that information, do you wish to reconsider? In other words, the Court advised the Jury, I presume this is the amount that you feel that they should recover from the Defendant; is that correct?

THE FOREMAN: Yes, Your Honor.

THE COURT: Is that the wish of each of you?

(All Jurors indicating, "Yes".)

THE COURT: Well, the reason the Court is telling you, because we like to give effect to the verdict of the Jury. We would like for their will to prevail, and of course, this would be a useless effort if the Court accepted this verdict in the manner in which you have returned it, because the Plaintiffs would not—they would get zero and they wouldn't get anything.

The Court would therefore tell you there are some fifteen defendants have already settled with the Plaintiffs, and as I say, the amount of money that they have settled for would exceed the amount of money that you have found in this case against the Defendant. The law would require the Court to deduct the amount of settlement that has been made, so these Plaintiffs would not get anything.

If you wish to go back and reconsider and consider the case as the Court advised you may do originally yesterday

when we gave you the charge, and also this morning, consider it as if none of the defendants have—that Pittsburgh Corning is one, and that no settlements have been made from any of them, that there was only one party, then adjudge the damages in accordance with what you find the injuries to be worth in dollars and cents that the Plaintiffs are afflicted with or have sustained, disregarding any other settlements.

Now, do you wish to do that? Do you wish to return to the Jury Room and begin your deliberations for that purpose? The Court will permit you to do so if you wish to.

THE FOREMAN: Yes.

The record reveals that appellant's counsel interrupted this exchange and moved that the trial court receive the jury's verdict. The trial court denied this motion, going on to further instruct the jury that:

The Court knows of no other way to do this, other than for you to reconsider the amount of damages, disregarding the other defendants and the settlements, because the Court would have to deduct those under the law. So, we are not at liberty to tell you what those are, or we would. So, the only way the Court can advise you, the only fair way that you can award damages to the Plaintiffs, is to consider what you think their injuries are worth in dollars and cents, disregarding any previous settlements by other defendants.

Now, in addition to that, if you wish to indicate on the verdict after finding the amount of damages, that you think they are entitled to, if you wish to also indicate that we think that certain proportions of this amount of damages that we find that the Plaintiffs is entitled to receive should be adjudged against this Defendant. Do you understand what I'm saying? In other words, if you would say in percentages or the amounts that should be adjudged against these defendants, you just have to write that into the verdict underneath it, saying that we feel that a certain percentage of this amount should be adjudged against the Defend-

ant, Pittsburgh Corning, either in the amount or the percentage.

At this point, appellant's counsel objected again to no avail. The jury then retired and returned with a second signed unanimous verdict awarding Belton $125,000 and Crochet $275,000. The trial court once again refused to accept the jury verdict, and instead decided to tell the jury the amount that each plaintiff had received in settlement from the other defendants:

Now, in view of the efforts that you have made, I feel that the Court should give you the information of the settlement made with the defendants who have settled in this case, in the event that you would like to reconsider your verdict.

The total amounts of settlement received by the Plaintiff, Jack Belton, from fifteen defendants, is Two Hundred Fifty-Nine Thousand Eight Hundred Forty-Three Dollars and Eighty-Eight Cents, ($259,843.88). If the Court accepted this verdict of $125,000, the Court would have to deduct the $259,843.88 from $125,000, which you could not deduct.

Now, if you had indicated, as you did in your first verdict, that you wish the Plaintiff, Belton, to receive $25,000 from the Defendants, Pittsburgh Corning, and the Plaintiff, Crochet, $75,000 from the Defendant, Pittsburgh Corning, then, of course, the effect of your verdict is to allow nothing for Mr. Belton. As to Mr. Crochet, thirteen defendants have paid a total of One Hundred and Forty-Five Thousand Three Hundred and Eighty-Nine Dollars and Forty-Two Cents ($145,-389.42). So, you could deduct $145,389.42 from $275,000 and you would arrive at One Hundred Thirty Thousand Dollars ($130,000), which your verdict would award Mr. Crochet some damages.

Now, I feel that in all fairness, since you have indicated originally that you wished the Plaintiff to recover in the amount that you indicated from the Defendant, that the Court should give you these figures and the number of defendants that have settled and for you, one

more time, to make an effort at returning a verdict.

Now, the reason for this is that we have spent considerable time trying this case. And that we want to salvage some benefit from the trial. If your verdict has been for the Defendant, of course, the Court would not have asked you to reconsider at all if it had been for the Defendant and against the Plaintiffs. But, it is obvious to the Court that it is the Jury's desire to find for the Plaintiff in some amount of damages. And this is the reason that we are going to the extent that we have. So, I am going to give the verdict back to you one more time and I will give you the figures that the Plaintiffs have—that the parties have stipulated in the record as the amount of settlement made by the Defendants, with which the Plaintiffs have settled.

I also would like for you, in order to make certain, to indicate underneath the verdict the amount that you enter, the amount also that you would like for each of the Plaintiffs to recover from this particular Defendant, Pittsburgh Corning so that then we will have no question about the will of the Jury.

Do you understand what the Court is telling you?

THE FOREMAN: Yes, Your Honor.

THE COURT: . . . .

This is strictly your verdict, not the Court's verdict or anyone else's verdict. It is your verdict. If you do not want to change it, that is your privilege; but, if you would like to change it, the amount, well, then you will have the privilege of doing so and the Court will grant you that privilege.

Now, the Court is giving you the original form of verdict with the additional information of the settlement made by the Plaintiffs with the other defendants. You understand, of course, that you do not have to reconsider further or change the figures which you have indicated that the Plaintiffs are entitled to, or you might change one and might not change the other. This is strictly within your discretion.

Now, the Court would inquire, does the Jury wish to deliberate further, in view of the further instructions that the Court has given you?

THE FOREMAN: Yes.

THE COURT: It is the wish of each of you?

The jury is indicating it is, it is unanimous and the Court will furnish you this information and return the verdict to you.

The jury then retired and returned with a third verdict, awarding $284,843.88 to Belton and $220,398.42 to Crochet. Pursuant to the trial court's instructions, the jury noted at the bottom of the verdict form, "we the jury assess $25,000.00 of the total sum to be paid to Jack Belton and $75,-000.00 of the total sum to be paid John E. Crochet by Pittsburg [sic] Corning Corporation."

The settlement figures along with the following summary of the jury deliberation proceedings are instructive.

| | Belton | Crochet |
|---|---|---|
| Prior settlements | $259,843.88 | $145,398.42 |
| Jury's first verdict | 25,000.00 | 75,000.00 |
| Amount which plaintiff would have received under jury's first verdict | –0– | –0– |
| Jury's second verdict | 125,000.00 | 275,000.00 |
| Amount which plaintiff would have received under jury's second verdict | –0– | 129,610.58 |
| Jury's third verdict | 284,843.88 | 220,398.42 |
| Amount which plaintiff would have received under jury's third verdict | 25,000.00 | 75,000.00 |

There are two matters of particular interest to note. First, that the amount of the first verdict was determined by the jury with knowledge of the plaintiffs' prior settlements with the other defendants but no knowledge of the actual amounts involved. Second, that the court's supplemental instructions to the jury resulted in the amounts the plaintiffs would have received under the jury's third verdict being equivalent to the amounts awarded in the first verdict.

## I.

Pittsburgh Corning contends that the admission of evidence of the settlement

by the fifteen co-defendants violated Fed.R. Evid. 408. Rule 408 provides:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Rule 408 by its terms does not operate to exclude evidence unless it is offered to prove "liability for or invalidity of the claim or its amount." *See also* Advisory Committee Notes, Fed.R.Evid. 408. Whether to admit evidence for another purpose is within the discretion of the trial court; the court's decision will not be reversed in the absence of an abuse of discretion amounting to "manifest error." *Reichenbach v. Smith,* 528 F.2d 1072, 1074 (5th Cir.1976). ■ The trial court's ruling that the fact of settlement by fifteen co-defendants was admissible did not violate Rule 408 because the evidence was not offered to prove liability or the amount of damages. Because Pittsburgh Corning intended to prove that Belton and Crochet had been exposed to the products of the other defendants, the trial court decided that the settlement evidence was necessary for the purpose of explaining why those parties were not in court. The court duly charged the jury that it was not to consider the evidence in reaching a verdict. In *Reichenbach,* 528 F.2d at 1074–75 and n. 10, we affirmed the district court's decision to exclude the evidence of a settlement because it would tend to confuse the jury. Similarly, in the instant case, we hold that the trial court's admission of the evidence to prevent confusion of the jury was not an abuse of discretion.

## II.

■ The court's instructions on the settlement amount, however, given after the jury had reached a verdict, do not fall within any exception to Rule 408. When the trial judge received the first verdict, he instructed the jury that the amount of the settlement would be deducted from it and, because the amount of the verdict was less than that of the settlement, the plaintiffs would receive nothing. In light of this information, the jury agreed to deliberate again. When it returned a second, larger award, the court refused to accept it; instead, the court revealed the dollar amounts of the settlements and instructed the jury to add to these figures any damages they wished the plaintiffs to receive from the defendant.

These instructions violated Rule 408 because they directed the jury to consider the settlement as part of the proof of the amount of the claim. *Cf. McHann v. Firestone Tire & Rubber Co.,* 713 F.2d 161, 166–67 (5th Cir.1983) (instruction that jury should deduct amount of pre-trial settlement from verdict violates Rule 408 because jury may believe large settlement by co-defendant to be proof that only co-defendant, and not defendant, was negligent). After the jury returned its first verdict, the court specifically asked it to base its award on consideration of the settlement, and the jury did so. This was error.

## III.

■ Pittsburgh Corning also contends that the trial court's instructions to the jury were impermissible comments on an ultimate issue of fact: the amount of damages. In a federal trial, the judge has the right to comment on the evidence, but may not comment on the ultimate factual issues to be decided. *McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 761 (5th Cir.1979); *see Quercia v. United States,* 289 U.S. 466, 470,

53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). We have observed that "[b]y reason of his role, quickly observed by jurors, the judge is a figure of overpowering influence, whose every change in facial expression is noted, and whose every word is received attentively and acted upon with alacrity and without question." *Travelers Insurance Co. v. Ryan,* 416 F.2d 362, 364 (5th Cir.1969).

The instant case illustrates the force of these observations. It appears that when the district judge received the first verdict he concluded that the jury had misunderstood the charge. At this point he was free to ask the jury members whether their verdict was intended to reflect the total amount of the plaintiffs' damages, to reinstruct them, and to allow them to deliberate further.[2] *University Computing v. Lykes-Youngstown Corp.,* 504 F.2d 518, 547 (5th Cir.1974); *see* Rule 49(b), Fed.R.Civ.P., and *Stewart v. Atlantic Pipeline Co.,* 470 F.2d 738 (5th Cir.1972), *modified,* 479 F.2d 311 (1973) (further deliberations allowed where interrogatories in conflict and verdict inconsistent with instructions). The district judge went further, however, and expressed his opinion on the factual question of damages.

The district judge first inquired whether the jury was aware that the amount of the pre-trial settlement would be deducted from its award, then asked the leading question, "I presume this is the amount that you feel that they should recover from the defendant; is that correct?" When the foreperson agreed, the judge stated that it would be "a useless effort" to accept the verdict because the plaintiffs "would get zero and they wouldn't get anything." When the jury returned with the second verdict the district judge again presumed that the award did not reflect the plaintiffs' actual damages and invited the jury to reconsider, stressing his opinion that it was the jury's intent that Belton and Crochet collect $25,000 and $75,000 respectively in addition to the settlement. The court instructed the jury that, in order to accomplish this intention, they must add the figures to the settlement amount to arrive at a total verdict. When the jury members returned their third verdict they had done precisely what the district judge had presumed they wished to accomplish.

On these facts, there can be no hesitation in concluding that the trial court encouraged a verdict, and in so doing invaded the jury's fact-finding function. When the jury first retired, it did not request additional instructions or indicate that it had misunderstood the court's charge. It was only after the suggestion was made by the court that the award reflected only the present defendant's portion of the damages, rather than the total amount, that the jury agreed that further deliberations were necessary. Although the district judge told the jury members that the verdict was strictly up to them, he also asserted that "it is obvious ... that it is the jury's desire to find for the Plaintiffs in some amount of damages." The judge's statements here, and the other instructions following the return of the first two verdicts, were outside the permissible scope of fair judicial comment. Upon consideration of those instructions and the jury's obedience to their direction, it is clear that the verdict upon which the judgment appealed from was entered did not represent the views of an impartial jury.

For the reasons indicated the judgment is REVERSED AND REMANDED.

---

**2.** Alternatively, he could have ordered a new trial. *Stewart v. Atlantic Pipeline Co.,* 479 F.2d 311, 312 (5th Cir.1973).