Warren E. WYATT; Jerome Robinson;
Kirk Quentin Garner,
Plaintiff-Appellees,

v.

SECURITY INN FOOD & BEVERAGE,
INC., a Maryland Corporation,
Defendant-Appellant,

and

Creative Inns, Inc., a Virginia Corpora-
tion; Ramada Inn, Inc., a Delaware
Corporation, Defendant.

No. 86–1578.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 7, 1987.

Decided May 20, 1987.

Warren Malcolm Davison (John W. Kyle,
Littler, Mendelson, Fastiff & Ticy, Balti-
more, Md., on brief), for defendant-appel-
lant.

W. Michel Pierson (Eugene A. Shapiro,
Pamela Randi Johnson, Baltimore, Md., on
brief), for plaintiffs-appellees.

Before WINTER, Chief Judge,
PHILLIPS, Circuit Judge, and
MERHIGE, Senior United States District
Judge for the Eastern District of
Virginia, sitting by designation.

JAMES DICKSON PHILLIPS, Circuit
Judge:

Appellant Security Inn Food & Beverage,
Inc. (Security Inn) here challenges the suf-
ficiency of the evidence on which a civil
jury awarded substantial damages to War-
ren E. Wyatt, Jerome Robinson and Kirk
Quentin Garner, the appellees, on a claim
for violation of their civil rights. Security
Inn also attacks certain evidentiary rulings

made by the trial judge prior to and during the five-day trial. We find that Security Inn's assignments of error lack merit and affirm the judgment.

## I

Appellees Warren E. Wyatt, Jerome Robinson and Kirk Quentin Garner filed this civil rights action in United States District Court for the District of Maryland alleging violations of 42 U.S.C. §§ 1981, 1985, 1986 and 2000a et seq. Each plaintiff alleged that he, a black person, was the victim of illegal discrimination while patronizing the Adams Lounge in the Ramada Inn in Baltimore County, Maryland. Security Inn operates the Adams Lounge and Creative Inns, Inc., a second defendant, supplies the lounge with management services.

The plaintiffs' charges stemmed from virtually identical incidents. Lounge employees approached each plaintiff to inform him that the lounge had a policy of ejecting patrons who were not drinking. Each of the plaintiffs protested but was nevertheless ejected. Each of the plaintiffs testified that when he was ejected he observed white patrons who were not drinking yet were allowed to remain. Each plaintiff alleged that the lounge's "drinks only" policy was discriminatorily applied to reduce the percentage of black patrons.

Following a five-day trial, the jury awarded each plaintiff $1.00 in compensatory damages and $15,000 in punitive damages against Security Inn. Security Inn appeals the final judgment in that amount.

## II

■ Security Inn first argues that the trial judge erroneously refused to grant a judgment notwithstanding the verdict in Security Inn's favor because there was no "substantial evidence that plaintiffs were the objects of racial discrimination." This argument is wholly without merit. The plaintiffs in fact offered at least five kinds of "substantial evidence" to support their claim either directly or circumstantially. First, they offered their own testimony regarding their ejection from the lounge. Second, they offered the testimony of a frequent lounge patron who testified that blacks were subjected to stricter requirements for admission and that only blacks were ejected for not drinking or other infractions of lounge "policy." This witness also testified that the lounge manager told her in 1984 that blacks were not wanted in the club. Third, they offered the testimony of past lounge employees who reported that various lounge practices (such as the music that was played and the food that was served) were explicitly designed to discourage black patronage. One of these employees, a former cocktail waitress, testified that employees manipulated the "drinks only" policy to exclude only blacks. Fourth, they offered depositions taken in prior discrimination suits in which the defendants admitted instituting policies to restrict the number of black patrons at least as of 1983. Fifth, they established numerous contradictions in the testimony of the defendants' witnesses, tending to suggest that their prior acknowledged discriminatory policies merely continued in subtler forms. From this abundant and varied evidence, the jury could certainly find that the treatment accorded to the plaintiffs resulted from the racially discriminatory application of a facially neutral "drinks only" policy.

Security Inn next argues that the trial judge erred by allowing the plaintiffs to introduce deposition testimony from prior litigation in which the defendants admitted shaping lounge policies to restrict the percentage of black patrons. The trial judge allowed this evidence under Fed.R.Evid. 404(b) for the purpose of showing discriminatory intent or motive in the application of the facially neutral "drinks only" policy.

■ The propriety of the trial judge's ruling is exemplified in many discrimination cases. The inherent difficulty of proving discrimination forces civil rights plaintiffs to rely heavily on circumstantial evi-

dence. Courts have frequently recognized that evidence of prior discriminatory acts is often crucial in proving that the defendants' current practices, viewed in a longer time frame, reveal discriminatory motivation. *See for example, Allen v. County of Montgomery, Alabama,* 788 F.2d 1485, 1488 (11th Cir.1986); *see especially Miller v. Poretsky,* 595 F.2d 780, 788–797 (D.C. Cir.1978) (Robinson, J., concurring). Security Inn complains rather disingenuously to this court that "the practical effect of placing this information [about past discriminatory policies] before the jury was to prejudice completely Defendant's position that they did no more than apply to Plaintiffs a nondiscriminatory policy." That is, of course, precisely why the evidence should have been admitted.

Finally, Security Inn complains that the trial judge erroneously refused to allow introduction of details surrounding the settlement of two prior discrimination suits. Security Inn insisted to the trial judge that since the plaintiffs were allowed to introduce admissions made during this prior litigation, it should be allowed to tell the jury: (1) that the prior cases settled; (2) that there were two defendants in the prior suits; and (3) that the settlement was for $146,000.

■ We agree with Security Inn that Fed.R.Evid. 408, which generally forbids testimony regarding compromises or offers to compromise, need not prevent a litigant from offering such evidence when he does not seek to show the validity or invalidity of the compromised claim. We do not see, however, how this evidence was relevant or how Security Inn was prejudiced by its exclusion. In retrospect it seems as likely as not that knowledge of the $146,000 settlement of a similar case would have simply encouraged the jury to award more substantial punitive damages here. Where the evidence is minimally if at all relevant, and the potential confusion of the issues for the jury is considerable, there can be no reversible error in excluding the evidence.

AFFIRMED.