IN RE AIR CRASH AT CHARLOTTE,
NORTH CAROLINA ON JULY 2,
1994.

No. MDL 1041.

United States District Court,
D. South Carolina,
Columbia Division.

Dec. 27, 1996.

James Wilton Orr, Bowers, Orr & Dougall, Columbia, SC, Lawrence Edward Richter, Jr., The Richter Firm, P.A., Mt. Pleasant, SC, William Parham Simpson, Haynsworth, Marion, McKay & Guerard, Columbia, SC, Michael L. Baum, Kananack, Murgatroyd, Baum & Hedlund, Los Angeles, CA, Frank H. Granito, Speiser, Krause, Madole & Nolan, New York City, Marc Moller, Kreindler & Kreindler, New York City, David E. Rapoport, Rapoport & Kupets Law Offices, Rosemont, IL, for Plaintiffs.

Mark A. Dombroff, Tom Almy, Dombroff and Gilmore, Washington, DC, Edward Wade Mullins, Jr., Nelson, Mullins, Riley & Scarborough, Charleston, SC, for Defendant USAir.

Patrick E. Bradley, U.S. Dept. of Justice, Torts Branch, Civil Div., Washington, DC, Raymond E. Clark, Asst. U.S. Atty., Columbia, SC, for Defendant U.S.

## ORDER ON ADMISSION OF THE SETTLEMENT AGREEMENT AND ADMISSION OF LIABILITY

JOSEPH F. ANDERSON, Jr., District Judge.

Presently before the court are two motions which relate to the admission into evidence of two interrelated documents That is, defendant USAir, Inc. ("USAir") has moved to admit the admission of liability by the United States of America ("the Government"), and the Plaintiffs' Steering Committee ("PSC") has moved for exclusion of the admission or, if the admission of liability is allowed into evidence, for admission of the corresponding settlement agreement between the Government and USAir.

This court believes that the best course of action would be to exclude evidence relating to the admission of liability as well as evidence relating to the settlement agreement. The court will, however, allow USAir to make the decision whether it intends to offer the admission of liability into evidence. Plaintiffs will be allowed to admit evidence of the settlement agreement only if USAir elects to offer the admission of liability, or otherwise opens the door to the settlement. Any decision as to the degree of detail to be admitted regarding the terms of the settlement agreement will need to be made in light of the circumstances justifying its admission.

Defendant USAir's motion to admit the admission (filed September 16, 1996) is, therefore, denied in part and granted in part. The PSC's motion *in limine* (filed November 19, 1996) is granted to the extent discussed herein.

This court further declines to certify this question for interlocutory appeal. As discussed more fully herein, interlocutory appeal would needlessly delay a trial for which significant preparations have already been made. Moreover, there are numerous scenarios under which such an appeal would become unnecessary or in which the result dictated might vary. Finally, any delay in this court's decision on the admission of the settlement agreement has been occasioned, in no small measure, by USAir's own actions. For these reasons, this court finds no reason to allow interlocutory appeal of this evidentiary issue.

### THE UNDERLYING ACTION

The present motions relate to the July 2, 1994, crash of USAir Flight 1016 near the Charlotte–Douglas Airport in North Carolina. Of the fifty-seven passengers on board, thirty-seven were killed and the rest were injured.

Subsequent to the crash, numerous wrongful death and survival actions were filed in state and federal courts around the country. Most of the actions filed in state court were eventually removed to federal court, and all federal court actions were eventually transferred to this district for pretrial proceedings pursuant to 28 U.S.C. § 1407. With the consent of the parties, this court transferred all but two of these cases to this district for all purposes pursuant to 28 U.S.C. § 1404(a). By later order, the remaining two cases were transferred for all purposes other than a determination of actual damages. *See* Order filed December 10, 1996.

A consolidated trial in all cases remaining against USAir is scheduled to begin in January, 1997 and to continue through February, 1997.[1] At present, there are approximately twenty-nine cases for trial against USAir.

## THE ADMISSION AND THE SETTLEMENT AGREEMENT

The two primary defendants in these actions, and the only ones relevant to the present motions, are the United States of America ("the Government") and USAir.[2] From April 1995, when this court opened discovery in this action through issuance of its first case management order, through the close of factual discovery on March 8, 1996, it appeared to the court that counsel for both USAir and the Government were vigorously defending the liability claims against their clients.[3]

On April 8, 1996, however, the Government advised the court that it would concede liability. Plaintiffs apparently first learned of the Government's concession the following day (April 9, 1996) at a hearing held in Tampa Florida. The following exchange occurred during that hearing:

THE COURT: ... I called my office late yesterday and the law clerk I left behind said they got word from the government defendants that they are going to concede liability, if I understood her correctly.

MR. BRADLEY ["GOVERNMENT"]: That is correct, your Honor.

THE COURT: What does that do, concede liability on the third party claim, too, on the claims directly against you or on all claims or what?

[GOVERNMENT]: That would be on all claims. Obviously ones that are presently filed now. I think, as we mentioned to your law clerk, this hasn't gone all the way through the approval process yet. We expect that could take a few more days to get final on. That is our intention.

MR. DOMBROFF ["USAIR"]: We filed yesterday and served yesterday ... a request for admission on the government. It is one request for admission. It states, and I quote, "The negligence of employees of the United States of America, specifically air traffic controllers at the Charlotte Douglas Airport, Air Traffic Control Tower, was *the proximate cause* of the crash of USAir Flight 1016 on July 2, 1996." It is

---

1. At the request of counsel, the claims against the United States have been severed from the claims against USAir. Because the United States has conceded liability, the only remaining issue in the cases against the United States is that of damages. Pursuant to the Federal Tort Claims Act, the damages claims are tried to the court sitting without a jury. Thus there is no reason for the United States to participate in the liability determination in the cases against USAir, which is to be tried to a jury.

2. Some of these consolidated actions were filed against both of these defendants, others only against USAir. Defendant USAir has asserted cross-claims or third-party claims against the Government in all cases in which USAir is a defendant. Certain other defendants were named in some of the actions but have previously

been dismissed by agreement or order of this court.

3. The initial case management order in this action, filed on April 11, 1995, allowed for discovery to "commence immediately" but did not set any deadlines. The second case management order, filed on May 30, 1996, established various deadlines including for the close of factual discovery on liability by November 1, 1995, and for the completion of all expert discovery by April 15, 1996. With the entry of the Fourth Case Management order (filed February 13, 1996), all deadlines were extended including by moving the close of factual discovery on liability to March 8, 1996. The Fourth Case Management order allowed for depositions of the Government's liability experts to begin on May 10, 1996 and required that they conclude by July 10, 1996.

our understanding the government is going to admit that.

THE COURT: Is that correct?

[GOVERNMENT]: That is correct, your honor. *This obviously comes in the context of an arrangement between the United States and USAir where we have resolved the issues of contribution.* This I would think would get the United States out of the trial from that point on.

\*    \*    \*    \*    \*    \*

MR. ORR ["PSC"]: Your Honor, obviously we just learned of this.

THE COURT: You didn't know about that?

[PSC]: No, sir.

Transcript of April 9, 1996, hearing at 54–56 (emphasis added).

The exchange continued with counsel for the plaintiffs raising a number of concerns regarding the details of the settlement agreement and admission and seeking disclosure of the agreement. *Id.* at 56–61. The following exchange was included in that discussion:

[GOVERNMENT]: ... If it is a matter of the question of collusion, there is not. *I don't think there would be any objection to submitting this to the court in camera for a finding of good faith on the issue of collusion.*

THE COURT: It is too important an issue to decide here without notice to anybody and me not having any authority. Let's think it over. If the plaintiffs want to move to compel disclosure of what agreement might exist, we will take a look at it.

MR. MOELLER [For "PSC"]: *It seems the first thing we want to know is when the agreement was executed. Secondly, we would like at the time it is executed for a copy to immediately be given to your honor.* When we know that it is executed, we will make the motion for discovery of that agreement if it is not produced voluntarily and then we will argue that issue because it colors a significant way this trial is going to proceed. That is what was attempted to do here. This is not—this is—Mary Carter never had it so sweet.

[USAIR]: Judge, we got a bunch of cry babies. That is what this is all about. We are not going to decide it now. We ought to just defer it.

Transcript of hearing at 60 line 17–61 line 14 (emphasis added).

The request to admit which USAir served on the Government, was not itself ever filed with this court. A response to the request to admit was, however, filed in support of USAir's motion for summary judgment. That response, which was dated April 26, 1996, reads as follows:

The United States responds to Defendant USAir's Request to Admit to the United States of America as follows:

1. The negligence of employees of the United States of America, specifically air traffic controllers at the Charlotte/Douglas Airport Air Traffic Control Tower, was *a proximate cause* of the crash of USAir Flight 1016 on July 2, 1994.

Response to Request No. 1: Admitted.

Response to Request to Admit, dated April 26, 1996 (emphasis added).

The court itself was told the basic terms of the agreement in an *in camera* hearing on May 28, 1996. At that time, counsel for the Government and USAir indicated certain details still needed to be worked out but that the agreement could probably be reduced to writing within a few weeks. *See* Excerpt Transcript of May 28, 1996 hearing at 12 (sealed). The court advised counsel for the plaintiffs that the agreement called for a percentage sharing of any settlements or judgments against either defendant but did not advise the plaintiffs of the percentage break downs.

From the time of the Tampa hearing on April 9, 1996, the court had frequent teleconferences with counsel as well as several hearings. During this time, which coincided with the period for expert discovery, the court repeatedly asked the status of the settlement agreement so that the court could conduct the *in camera* inspection suggested by the Government and, if appropriate, provide a copy to plaintiffs' counsel. Such an examination by the court was necessary before the ultimate issue of disclosure to the jury could

be addressed. Repeatedly, however, the court was told by USAir's counsel that the agreement was not finalized. By contrast, on several occasions, counsel for the Government indicated that he saw no reason for further delay in execution of the agreement and disclosure to the court.

Frustrated with the failure of the defendants to finalize the settlement agreement, the court finally issued an order on August 15, 1996, releasing the transcript of the May 28 *in camera* hearing. The court continued, however, to inquire when the final agreement would be signed. A final signed agreement was provided to the court by letter sent November 1, 1996.[4] The only signatory for USAir was its trial counsel, Mr. Dombroff. The agreement, while containing numerous terms as to control and coordination of the litigation, did not vary from the basic terms previously disclosed to the court in late May 1996.

A copy of the settlement agreement was provided to the PSC by the court on or shortly after November 1, 1996. As of that date, trial had been continued from a planned October trial to a January trial and all discovery had closed, but for certain specific discovery matters which had been the subject of disputed motions. Because of strict confidentiality terms requested by USAir, the PSC was not allowed to disclose the terms of the settlement agreement to other counsel of record until the court so ordered at a December 16, 1996 pretrial conference.

## DISCUSSION

1. **Rule 403 of the Federal Rules of Evidence allows this court to exclude the Governments' admission of liability because it is of limited, if any, relevance to the issue of USAir's negligence and because any relevance is outweighed by the risk of unfair prejudice and confusion.**

The Federal Rules of Evidence vest the court with the initial duty to determine the admissibility of evidence. Fed.R.Evid. 104.

The threshold inquiry is whether the evidence is relevant, that is, whether it makes a fact in issue more or less likely to be true. Fed.R.Evid. 401. However, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time...." Fed.R.Evid. 403. *See also* Fed. R.Evid. 102.

▮▮▮▮ This court finds the Government's admission that it was "a proximate cause" of the air disaster to be of only limited relevance, if any, because this admission is, at best, only marginally probative of whether USAir's negligence was *also* a proximate cause of the accident. Under North Carolina law, which is applicable in this case, joint tortfeasors are subject to joint and several liability. One defendant's negligence is not, therefore, negated by the fact that others may also have contributed to the injury. *Young v. Baltimore & O.R. Co.*, 266 N.C. 458, 146 S.E.2d 441, 446 (1966). Liability is neither enlarged nor decreased because the acts of another also contributed to the injuries. *Hall v. Carroll*, 253 N.C. 220, 116 S.E.2d 459, 462 (1960). For these reasons, evidence of settlement or dismissal of previous civil actions between other parties related to the same events has been held irrelevant and inadmissible under North Carolina law. *Campbell v. Pitt County Memorial Hospital*, 84 N.C.App. 314, 352 S.E.2d 902, 905 (1987).

▮▮▮▮ Further, allowing the Government's admission of liability, into evidence in a trial proceeding involving only USAir, would violate each of the above quoted concerns of Rule 403. That is: (1) the probative value of the Government's admission of liability, if any, is substantially outweighed by the danger or unfair prejudice because the admission was made in the context of a settlement, and because the jury might be inclined not to decide the difficult issues before it (particularly in a highly technical and very lengthy trial) if it believes the plaintiffs will recover

---

4. An unsigned copy of the agreement was provided to the court no more than a few days before    November 1, 1996.

damages in any case; (2) the jury could easily be confused by the limited legal meaning of a response to a request for admission of ultimate liability by a corporate type entity-compared to an admission of fact by a witness, testifying under oath;[5] (3) the jury could also be mislead as to the true import of the admission, particularly if it is allowed in without the counterbalancing settlement agreement; and (4) undue delay and waste of time would be occasioned by introduction of the admission of liability as it would necessitate introduction of counterbalancing evidence including the settlement agreement and circumstances surrounding its creation.[6]

There can be no question that the settlement agreement and the admission are clearly linked. That is, USAir would not have the advantage of having the admission without the corresponding settlement agreement. The first and most obvious basis for this conclusion is the Government counsel's statement during the Tampa hearing, when the admission was first discussed, that the admission arose in the context of an agreement between USAir and the Government of their claims for contribution.

Even without this concession, the court could not help but reach this conclusion in light of the circumstances surrounding the admission. First, USAir's counsel stated that the request for the admission had been served just one day before the Tampa hearing. Yet, at that time, USAir's counsel stated that he understood the Government would admit the request. In itself, this suggests prior negotiations rather than a simple request to admit served on an adverse party.

Second, the Government's response to the request for admission as ultimately filed with the court reflects a single but very significant difference in wording in the request itself, rather than through some qualification of the answer. This suggests further negotiations between the Government and USAir.[7]

Finally, the request was served over a month after the time for written fact discovery had closed and was answered in significantly less than the time allowed by the Federal Rules. This also suggests a cooperative rather than an adversarial relationship between the Government and USAir at the time of the admission.

The potential effect of the admission and settlement agreement must also be considered. Without stating the specific terms, the court will state that the effect of the settlement agreement, coupled with the admission, is to place both parties in a better position than they might otherwise be in if found liable. Certainly, as to actual damages, either party is invariably better off with some agreement to split actual damages than it would be if found solely liable. Under the settlement agreement here, however, the Government is actually in a better position than if both USAir and the Government were found liable. Thus, the Government gave up nothing in making the admission if considered in light of the settlement agreement and if it believed it would be held either solely or even jointly responsible.[8]

---

**5.** Requests for admission are governed by Rule 36 of the Federal Rules of Civil Procedure which limits the use of the admission to the case in which it is served. The rules are intended to encourage parties to admit facts or concede issues for that case only. Responses to requests for admission are not, therefore, the equivalent of sworn testimony from the same or another proceeding.

**6.** Because of the involvement of counsel remaining in this trial in the settlement-admission process, various problems regarding testimony by counsel may need to be addressed if the admission is offered. This is particularly so if USAir takes the rather remarkable position, as it has in at least one recent teleconference, that the admission and settlement were not linked. As noted in the text, the Government has consistently admitted the connection since the Rule 36 admission was first discussed.

**7.** The quoted request to admit as read to the court in Tampa asked the Government to admit that its negligence was *the* proximate cause of the accident. The ultimately filed response reflected a change in the request itself, so that it asked the Government to admit that its actions were *a* proximate cause of the accident. Normally, the party admitting a request does not modify the request, but reflects any qualification in the response.

**8.** Under the applicable North Carolina law, the parties would each be responsible for fifty percent of the damages if both were found liable.

USAir also gains a benefit in the bargain not only by insuring the Government will pay at least some portion of any actual damages judgment, but also by limiting the probability of punitive damages awards and the risk of a runaway actual damages verdict. This is because while the Government would, if found liable, be subject only to a nonjury trial for actual damages, USAir could potentially be held liable for punitive damages, with both actual and punitive damages being decided by a jury. Thus, if USAir and the United States *could* agree to have one of them be found liable, rather than the other, with an agreement to split any actual damages on some percentage basis, conventional wisdom would dictate shifting liability to the United States.[9]

The court is not suggesting a nefarious purpose in either the admission of liability or the settlement agreement. Both are, independently, encouraged by the law and public policy. Indeed, the plaintiffs are benefitted by the admission of liability in that they are assured of recovery of actual damages against the Government. However, if the admission is used as USAir suggests, there could well be a nefarious result.

This concern is heightened, not lessened, by the fact that the party making the admission is the United States Government. As USAir has itself argued vehemently in regard to the admission of certain Government documents, a jury might place undue weight on statements of an official governmental agency.[10] Similarly, as USAir argues in the present motions, it is often impossible to correct an impression once planted in the minds of jurors. Reply Memorandum in Support of Motion to Admit the Admission at 12 (citing *Myers v. Pennzoil Co.*, 889 F.2d 1457, 1460–61 (5th Cir.1989)) (trial judge did not abuse his discretion or cause "harmful error" when he instructed defense attorney that he could not elicit testimony as to settlement between plaintiff and employer of witness given concern over jury confusion).

In the case of documents such as governmental inspection reports, which might be given an undue degree of deference, this court can give limiting instructions which might cure any problems. This is particularly true if the document is offered to show notice to the recipient, rather than for the truth of what is asserted. In other words, the jury can be told that whether the statement was correct or not is irrelevant. This is not true in the case of an admission as an admission would be offered solely for its truth. When, as here, the admission is of a legal conclusion which would necessarily involve (and therefore infer) numerous undisclosed facts, the problem of confusion and unfair prejudice becomes even greater. This is particularly so given the limited purpose of a request to admit.[11]

Finally, the court sees little need for this admission. It is not an admission of a specific fact by a party remaining in a trial, but the admission of the ultimate conclusion of law and fact by a defendant who will never be seen at trial. That the United States of

---

9. Certain motions filed by USAir clearly indicate that USAir sought to gain these advantages. For instance, promptly after receiving the admission from the Government, USAir filed that admission in support of a motion for partial summary judgment. That motion was granted by order filed May 30, 1996, which carefully limited the effect of the order. On August 12, 1996, USAir filed a motion seeking immediate damages trials against the Government based on the grant of partial summary judgment and seeking to stay all proceedings against USAir until such damages trials were completed. This motion was promptly denied. It can be questioned whether USAir had any standing to pursue such a motion as it would not be a party to the damages trials in the actions against the Government. To the extent USAir did have an interest, it was only by virtue of the responsibility assumed under the settlement agreement.

10. *See, e.g.*, USAir's Memorandum In Support of Motion In Limine To Exclude Reference to Previous Altitude Awareness Program at 9 ("that these are draft reports of an agency of the United States Government almost guarantees that they will be given inordinate weight by the jury.")

11. The limited intent of the admission is demonstrated in part by the Government's actions since entering the admission. That is, that despite the admission of liability in April 1996, the Government has continued to deny administrative claims on the basis of lack of responsibility for the accident. Clearly then, the Government has not conceded liability outright and does not infer that it is solely liable.

America may concede that it is liable or was at fault, does not necessarily mean anything as to whether USAir is at fault. The trial could be conducted quite simply and quite fairly by advising the jury that more than one party can be liable and that their sole job is to decide if USAir is liable, irrespective of the possible liability of any other potential defendants. The court hastens to add that USAir will still be able to mount a traditional "empty chair" defense. That is to say, USAir will be free to offer evidence tending to indicate that air traffic controllers at Charlotte–Douglas Airport did not transmit information needed by the USAir pilots and that, for this reason, the pilots were not negligent. The ruling in this order imposes no limitation on USAir's ability to produce evidence of what the air traffic controllers did and did not do on the day of the crash, because this evidence is intertwined with the question of whether the pilots were negligent.

Comparing the potential for unfair prejudice from this admission, which was clearly procured as part of a settlement between codefendants, with its probative value, this court can only conclude that it would be within the proper exercise of this court's discretion to exclude the admission altogether. The court will not, however, require such an outright exclusion. Instead, the court will allow USAir to make this election. If the admission is offered, the door will be open to admit the settlement agreement, at least in part. This is not to say that other statements or arguments of defense counsel might not also open the door to admission of the settlement agreement.[12]

**2. There are, at the least, serious questions whether the Government's admission of liability can be offered in a trial in which the United States Government is no longer a party.**

The admission of liability was made in response to a Rule 36 Request for Admission.

That rule provides that "[a]ny matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.... Any admission made by the party under this rule is for the purpose of the pending action only." Fed.R.Civ.P. 36(b).

The United States Government is either a defendant or at least a third-party defendant in all cases presently consolidated for trial. It is not, however, a first party defendant in a number of these cases and no claims against the Government will be at issue in the upcoming trial. There is, therefore, an initial question whether this admission can be offered by any party in a consolidated trial which addresses only the claims between USAir and plaintiffs because the Government is not a "party" to that trial. Assuming this concern could be overcome, there remain several other problems with use of the admission.

First, this court must determine whether the admission of liability satisfies the general rules for admission of evidence.

"Admissions obtained under Rule 36 may be offered in evidence at the trial of the action, but they are *subject to all pertinent objections to admissibility* that may be interposed at trial. *A party may not utilize its own admissions* at the trial. It is *only when the admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent.*"

8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2264 at 571–72 (1994) (emphasis added, footnotes omitted).

Obviously, the most significant of these concerns is the hearsay rule.[13] Because the

---

12. For instance, if USAir calls witnesses who are government employees, their knowledge of the admission and agreement may be admissible. This could, however, first be addressed through *voir dire*, outside of the jury's presence. If, by contrast, preadmission/agreement depositions are used, less of a concern is raised.

13. USAir argues that the admission of the Government is not hearsay because it has been adopted by the plaintiffs by virtue of their continued pursuit of claims against the Government for negligence and by virtue of their reliance on the admission to withdraw an expert witness whose testimony would have gone only to issues removed from the case by the admission: Certainly, it is correct that most of the plaintiffs pursued

admission was apparently obtained by USAir under circumstances that suggest a cooperative arrangement, USAir should not be allowed to use the admission as that of a "party opponent" simply because the parties were not truely adverse.

◼ If the Government were still in the case, the admission could certainly be offered by the plaintiffs as an "admission of a party opponent." Under these circumstances, however, the plaintiffs would be allowed to challenge the credibility of the admission:

> [an] admission does not bind the party who requested it. Even though it introduced the response in evidence it is free to produce other evidence contradicting the facts contained in the response. Nor do the admissions of a party bind a coparty.

*Id.* at 580.[14] The rules certainly cannot be intended to place the plaintiffs in a more limited position when they did not request the admission, are not offering it, and the party who made the admission is no longer in the case due to a settlement with the remaining defendant who was the author of the request for admission.

Of course, applying the general rules of evidence also means the court must consider the dictates of Rule 403 of the Federal Rules of Evidence which, as discussed above, this court finds to require exclusion of this admission absent counterbalancing evidence regarding the settlement agreement.

**3. Rule 408 of the Federal Rules of Evidence does not preclude admission of the settlement agreement in this case if offered to challenge the validity of the Government's admission of liability.**

◼ USAir argues that Rule 408 precludes admission of the settlement agreement even if the admission is allowed into evidence. Rule 408 precludes evidence of compromise "to prove liability for or invalidity of the claim or its amount." Fed.R.Evid. 408. This rule "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness." *Id.*

USAir argues that the exception to exclusion is inapplicable because the admission of liability is not a witness whose credibility can be attacked. To the contrary, in the manner of use proposed by USAir, the admission is the ultimate witness statement. Here the admission comes from the United States Government, not an individual witness. It, therefore, speaks with an authority that no single witness could convey.

Moreover, the admission would likely be read into the testimony of any Government witness by the jury, thereby coloring the testimony of each of these witnesses. That is, the jury would hear the factual testimony from each of these witnesses and might be mislead into reading into each witnesses' testimony an admission that the particular facts testified to constitute negligence on the part of the Government.

The exceptions to Rule 408 are not, in any case, limited to evidence offered to prove bias or prejudice of a witness, but to purposes other than proving liability *"such as* proving bias or prejudice." Fed.R.Evid. 408 (emphasis added); *see* Advisory Committee Notes to Rule 408 (examples are illustrative). Impeaching an admission of liability by a now-absent defendant falls into this broad category.

While no case could be found that was precisely on point, this court finds support

---

and appear to have every intention of continuing to pursue claims against the Government as one of the parties responsible for this air disaster. That plaintiffs believe the government was one cause of the disaster is not, however, the admission USAir wishes to offer into evidence. USAir seeks to offer the fact that the government itself concedes liability. Clearly this is intended for the purpose of establishing that USAir is less likely to be responsible for joint liability (discussed in Section 1 above), however, the admission of liability is not probative of this issue. Withdrawal of the expert is likewise not a basis for treating the admission as an adopted admission since plaintiffs would have no further reason to utilize this expert once the issue of government liability was removed from the case.

14. This language also suggests another element of unfairness in allowing USAir to rely on the Government's admission of liability. That is, USAir should not be allowed to rely on an admission by which it would not be bound.

for its conclusion that the settlement would be admissible, at least to the extent necessary to counter the admission of liability, in several cases. For instance, in *Brocklesby v. United States*, 767 F.2d 1288, 1292–93 (9th Cir.1985), *cert. denied*, 474 U.S. 1101, 106 S.Ct. 882, 88 L.Ed.2d 918 (1986), the court held that an indemnity agreement between two defendants was admissible in the bifurcated trial against one of the two defendants to show lack of adversity between the defendants and to attack the credibility of defense witnesses. Both circumstances are present here if the admission is offered into evidence. *See also Belton v. Fibreboard*, 724 F.2d 500 (5th Cir.1984) (upholding admission of a settlement agreement to avoid confusion by explaining why seemingly culpable parties were not in court but reversing as to later instructions as to amount of settlement).[15]

USAir relies on *Wyatt v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69 (4th Cir.1987) for the proposition that allowing a party admission to be offered as evidence does not require also allowing in any settlement related to that admission. This reliance is misplaced both because of the difference in the nature of the "admissions" and because the connection between the "admissions" and the settlement was completely different in *Wyatt* than in the present case.

In *Wyatt*, an action for racial discrimination in a hotel lounge, plaintiffs were allowed to offer *deposition testimony* of the defendant's employees. The depositions were taken in a prior action. In the prior testimony, defendant's agents admitted that lounge policies had been shaped to restrict the percentage of black patrons. Because plaintiffs had been allowed to introduce the prior testimony as "admissions," defendant felt it should have been allowed to offer evidence that those actions ultimately settled and the details of those settlements including the amount paid and that there had been two defendants. The Court of Appeals affirmed the trial court's refusal to allow introduction of the settlement because the settlement lacked relevance and, in any case, defendant was not

harmed by the exclusion of evidence which might well have led to a larger verdict against it.

The facts here could not be more different. The "admission" here is a legal conclusion given in response to a request for admission, not prior sworn factual testimony. The admission here was made by an entity which will not be a party in the trial, not by an agent of the remaining defendant. The settlement here was entered into between codefendants in connection with the making of the admission. There is no suggestion of such a connection in *Wyatt*.

Some additional guidance can be found in cases addressing what are commonly referred to as "Mary Carter" agreements. Although the present admission of liability with the corresponding settlement agreement does not present the precise same situation, allowing the admission of liability into evidence without allowing in the settlement agreement would raise the same concerns that have led a number of states to prohibit such agreements. *E.g., Elbaor v. Smith*, 845 S.W.2d 240, 246 (Tex.1992) (joining Nevada, Wisconsin, and Oklahoma in declaring Mary Carter agreements void as against public policy and defining a Mary Carter agreement as one in which the settling defendant retains a financial stake in the plaintiffs' recovery and remains a party at the trial of the case). The concerns here are much the same as those addressed by the *Elbaor* court:

> As a matter of public policy, this court favors settlements, but we do not favor ... settlement arrangements that skew the trial process, mislead the jury, promote unethical collusion among nominal adversaries.... The bottom line is that our public policy favoring fair trials outweighs our public policy favoring partial settlements.

*Id.* at 250.

These concerns led the *Elbaor* court to find Mary Carter type agreements void as against public policy. That result is not necessary here because it is only the *effect* of the

**15.** Absent any inference by USAir that the Government has admitted liability, the court does not believe admission of the settlement agreement would be necessary to serve this purpose in this court. Proper introductory and closing instructions from the court should preclude improper speculation.

use of the Government's admission in the trial of the claims against USAir, if allowed in without the settlement agreement, that presents the concern. *See generally United States v. Peed*, 714 F.2d 7, 9 (4th Cir.1983) (finding efforts to influence a prosecution witness not to be barred by Fed.R.Evid. 433 or 408).

### 4. Delay of the trial pending an interlocutory appeal of the evidentiary issues addressed in this order would be detrimental to the interests of justice.

■ At the pretrial hearing on December 16, 1996, counsel for USAir suggested that once this court issued its order on these critical evidentiary issues, the court should then certify the questions for interlocutory appeal. This court declines that suggestion, for the reasons discussed below.

First, while the present evidentiary issues are certainly critical, in that an incorrect decision might dictate reversal under some circumstances, this court does not believe that the proper outcome is nearly so close or difficult a question as USAir suggests. As discussed in the preceding three sections, there are solid arguments for excluding the admission altogether and for allowing introduction of the settlement agreement under certain circumstances, most specifically to counter the effect of the admission.

Despite serious reservations, this court has allowed defendant USAir to make the decision whether to offer the admission and, consequently, to open the door to the settlement agreement. Which choice USAir makes cannot be known at this time. Similarly, whether witnesses will be called who might be impeached as to bias is largely within USAir's control and cannot be predicted at this time. Any appeal would, therefore, need to be made without full knowledge of the circumstances under which the evidence might be offered.

Similarly, because there are significant factual disputes in this case, it would be foolish to presume that the issue will survive. USAir might prevail on the issue of liability which would preclude any basis for appeal by USAir. Even if found liable for actual damages, but not for punitive damages, it cannot be certain that USAir would chose to appeal given the numerous uncertainties that an appeal would raise. In any case, there will be a number of difficult evidentiary rulings to be made in this trial, many of which may be just as critical as this one. While interlocutory appeal might provide guidance as to one such ruling, it could hardly resolve all of them.

USAir's suggestion of interlocutory appeal also ignores the very significant impact that delay of trial would have on the court and the parties.[16] Here, due to the Government's admission of liability coupled with the agreement between the Government and USAir, USAir will be responsible for paying damages regardless of the outcome of the present trial. Thus, it is in USAir's interest to delay the trial as it will, most likely, delay payment of possibly significant damages. By contrast, plaintiffs, who will receive some award of damages under any circumstances, will be injured economically by the further delay in resolution of the issues.[17]

Delay of trial at this stage also ignores the very significant preparations made to date for this trial. As of the December 16, 1996 pretrial conference, this court had summoned 150 jurors for January 9, 1997 selection. All of these jurors had been required to complete and return a twenty-one page case-specific juror questionnaire. The court had blocked off most of January and all of February for the trial of this case and had arranged for a visiting judge to handle this court's normal trial docket for those two months. Counsel for all parties had also been directed to clear their calendars for this nearly two month period.

Finally, the court cannot ignore the fact that any "lateness" of this decision is due in

---

**16.** Counsel for USAir suggested these concerns were insignificant by commenting several times at oral argument: "So what" if trial is delayed.

**17.** While the plaintiffs could request damages trials against the Government prior to a trial of

the issues pending against USAir, it is unlikely they would do so for various tactical reasons including the differences in the mode of trial. jury versus nonjury, and, at the least, the need to retry the damages case to a jury at a later time.

no small measure to USAir's seven month delay (from early April until early November) in finalizing and executing the settlement agreement which, ultimately, was signed only by counsel. By this delay, USAir knowingly delayed plaintiffs' ability to make the present arguments.[18] USAir may well also have delayed the finalization of the documents for other strategic reasons.[19]

## CONCLUSION

For the reasons stated herein, this court will exclude evidence of the settlement agreement unless USAir opens the door to such evidence: by seeking to admit the Government's admission of liability; by inferring such an admission; by offering witnesses whose testimony might be biased by the admission or settlement agreement; or by some other similar action. The court defers ruling on just how much of the settlement agreement may come in, if any, in the event this door is opened.

IT IS SO ORDERED.

---

**18.** In his comments at the April 9, 1996 hearing in Tampa, USAir's counsel cavalierly dismissed plaintiffs' concerns as those of "cry babies" and suggested that the discussion be deferred, presumably until the documents were complete. The final documents were, however, not forthcoming despite numerous requests from the court and statements from counsel for the Government that he saw no reason the documents could not be finalized. The reason for the delay appears, therefore, to be strategic. At the least, it served a strategic purpose.

**19.** In at least one recent teleconference, USAir's counsel indicated that there was no connection between the settlement agreement and the admission of liability. He supported this claim of no connection by referring to the significant gap in time between when the admission was signed and the execution of the settlement agreement. This court finds that argument to be most disingenuous.