**Maurice EVANS, Angela Evans, Lawrence Hammond and Cynthia Ward, Plaintiffs,**

v.

**HOLIDAY INNS, INC. d/b/a/ Holiday Inns Worldwide, et al., Defendants.**

**Civil No. AMD 96–1403.**

United States District Court, D. Maryland.

Jan. 13, 1997.

David A. Branch, David A. Branch, P.C., Washington, DC, for plaintiffs.

Warren D. Stephens, Baltimore, MD, for defendants.

## MEMORANDUM

DAVIS, District Judge.

The plaintiffs are four African–Americans who were guests at the Holiday Inn in Solomons, Maryland.[1] A dispute with the motel management over allegations that they were disturbing other guests led to the eviction of two of the plaintiffs from the motel in the middle of the night. Alleging that their treatment was motivated by racial discrimination, all the plaintiffs have asserted federal claims, including a claim pursuant to 42 U.S.C. § 1981, for racially discriminatory enforcement of the motel's policy regarding tolerance of guest noise, and a companion claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3 (public accommodations)[2], as well as myriad state-law claims. Jurisdiction exists under 28 U.S.C. §§ 1331, 1343 and 1367. Pending before the court is the motion of the remaining defendants for summary judgment. As the parties have fully briefed the issues presented, no hearing is deemed necessary. Local Rule 105.6 (D.Md.1995). For the reasons set forth below, I shall grant the motion for summary judgment.

## I. FACTS

On May 5, 1995, plaintiffs Maurice and Angela Evans registered as guests at the Holiday Inn in Solomons, Calvert County, Maryland. Mrs. Evans was an employee of an unrelated Holiday Inn franchise in Montgomery County, Maryland. The Evanses were assigned to room 582 and spent the night of May 5 there without incident. On the next day, May 6, 1995, the Evanses were joined at the motel by two friends, plaintiffs Lawrence Hammond and Cynthia Ward, who were assigned to room 571. On the evening of May 6, the plaintiffs had dinner and eventually returned to the Evanses' room, 582.

The events giving rise to this case occurred after the plaintiffs returned to room 582. According to the plaintiffs, over a period of several hours, they were harassed by motel security guards, who interrupted their "quiet visit" several times with rude admonitions to reduce the noise level. Plaintiffs insisted that they were not creating a distur-

---

1. Plaintiffs originally sued the Holiday Inn trade name but subsequently amended their complaint to correct misnomer and to join defendant Holiday Inns, Inc. Holiday Inns, Inc., was not named as a movant as to the defendants' motion for summary judgment, but I am confident that this was a mere oversight. In any event, it is clear that the asserted liability, if any, of Holiday Inns, Inc., is based upon principles of *respondeat superior*, and thus its liability is wholly derivative.

   The law enforcement defendants were dismissed by prior order.

2. Section 2000a states in pertinent part:

   (a) Equal Access: All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin.

   Section 2000a–3 creates a private cause of action to enforce § 2000a. Only injunctive and declaratory relief (and attorney's fees) may be awarded under Title II. *See generally Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

bance, and spoke several times to the manager on duty to complain about the harassment. Moreover, according to plaintiffs, not only were they *not* loud or unruly, but in the course of the evening, they encountered loud and unruly whites, some of whom were attendees at a late wedding reception at the motel. Plaintiffs assert that at one point, for example, a woman was observed on the shoulders of a man proceeding through the lobby of the motel. At approximately 1:45 a.m. on May 7, 1995, local law enforcement officers appeared at room 582 in the company of the motel security guards and, at the request of the motel management, ordered the Evanses to leave the premises immediately. Unable to locate alternative lodging, the Evanses returned to their home in Annapolis two hours away. Mr. Hammond and Ms. Ward returned to their room for the night and departed for home later on May 7.

Curiously, the defendants' version of the events of the early morning of May 7 is provided entirely by the plaintiffs' opposition to the motion for summary judgment. According to the defendants' account, the heart of the matter was simple: the front desk received repeated telephonic complaints from room 580 and 586 about the noise emanating from room 582, where the plaintiffs were gathered. At least one of these complaints from room 580 (adjacent to 582) included an allegation that there was purposeful banging on the common wall between the two rooms, apparently in retaliation for a prior complaint of noise. According to defendants—again by virtue of the plaintiffs' submission—after no fewer than three earnest attempts to get the occupants of room 582 to reduce the noise, and after a heated exchange between Mr. Evans and the front desk manager in the presence of newly-arriving guests—whom Mr. Evans advised to find another motel at which to stay—the manager made the decision to evict the Evanses, and called the local sheriff's office for assistance.

## II. SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. at 2510. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2510–11. The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985). *See O'Connor v. Consolidated Coin Caterers Corp.,* 56 F.3d 542, 545 (4th Cir.1995), *rev'd on other grounds,* —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). Furthermore, the facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986); *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

## III. DISCUSSION

Protection against racial discrimination in the making and enforcement of contracts is provided by 42 U.S.C. § 1981. In *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court held that § 1981 applied to "the refusal to enter into a contract with someone, as well as the offer to make a contract only on discriminatory terms." *Id.* at 177, 109 S.Ct. at 2372. The Court held, however, § 1981's protection did not extend to conduct occurring after the contractual relationship had been established, "including breach of the terms of the contract...." *Id.*

Partly in response to *Patterson*, Congress amended § 1981 to clarify that it applied to private parties and those acting under color of state law, and to expand its reach to the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Civil Rights Act of 1991, Pub.L. No. 102–166, § 101 (codified as 42 U.S.C. § 1981(b)). Accordingly, as amended, § 1981 provides protection against conduct occurring after the formation of a contract, including an innkeeper's discriminatory eviction of a guest on the basis of race.

The plaintiffs have not demonstrated, or even suggested, that they have access to any *direct* evidence of a racially discriminatory motive on the part of defendants. *Cf. Wyatt*

*v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69, 70 (4th Cir.1987).[3] Moreover, the parties appear to be in agreement that both of the overlapping federal claims require proof of elements which echo the well-known proof scheme of *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The most logically comparable type of discrimination claim in the present context seems to be a claim alleging discriminatory discipline under Title VII.

Resort to a Title VII disciplinary model is not to suggest that the plaintiffs *concede* that they were causing a disturbance at the motel (and were deserving of some "discipline"); to the contrary, it is understood that, in the alternative, the plaintiffs contend that defendants' actions were simple and unambiguous acts of racial discrimination taken against well-behaved guests.

There are serious problems with this alternative theory, however. The most significant problems with this theory are (1) there is no evidence beyond the plaintiffs' bald opinions to support it, and (2) the fact that Mr. Hammond and Ms. Ward *were not* evicted fatally undercuts the theory. Furthermore, the plaintiffs have suggested that the proper comparison (an intentional discrimination claim, it must be recalled, is necessarily grounded in theories of *disparate* treatment,

---

**3.** In *Wyatt*, the plaintiffs asserted claims, *inter alia*, under § 1981, that they were excluded from a hotel cocktail lounge because they were black, through the ruse of a "drinks only" policy. In affirming a judgment for plaintiffs, the Fourth Circuit described the evidence presented in support of those claims as follows, 819 F.2d at 70:

Security Inn first argues that the trial judge erroneously refused to grant a judgment notwithstanding the verdict in Security Inn's favor because there was no "substantial evidence that plaintiffs were the objects of racial discrimination." This argument is wholly without merit. The plaintiffs in fact offered at least five kinds of "substantial evidence" to support their claim either directly or circumstantially. First, they offered their own testimony regarding their ejection from the lounge. Second, they offered the testimony of a frequent lounge patron who testified that blacks were subjected to stricter requirements for admission and that only blacks were ejected for not drinking or other infractions of lounge "policy." This wit-

ness also testified that the lounge manager told her in 1984 that blacks were not wanted in the club. Third, they offered the testimony of past lounge employees who reported that various lounge practices (such as the music that was played and the food that was served) were explicitly designed to discourage black patronage. One of these employees, a former cocktail waitress, testified that employees manipulated the "drinks only" policy to exclude only blacks. Fourth, they offered depositions taken in prior discrimination suits in which the defendants admitted instituting policies to restrict the number of black patrons at least as of 1983. Fifth, they established numerous contradictions in the testimony of the defendants' witnesses, tending to suggest that their prior acknowledged discriminatory policies merely continued in subtler forms. From this abundant and varied evidence, the jury could certainly find that the treatment accorded to the plaintiffs resulted from the racially discriminatory application of a facially neutral "drinks only" policy.

not simply unfair or harsh treatment) is between their behavior and that of the persons they assert were engaged in misconduct in the lobby area of the motel. Finally, the plaintiffs themselves have urged the court to adhere to the *McDonnell Douglas* formula, but only in a generalized way, without suggesting which of the many available models is most apt. *See* Plaintiffs' Mem. at 4 ("By analogy to the Title VII statutes [sic], plaintiffs have established a prima facie case of discrimination by showing that they fall within a class of individuals protected by the statute and adverse action was taken against them by the defendants."). Plaintiffs paint with too broad a brush; the level of generality at which they seek to cast the elements of a prima facie case lacks utility.

■ To establish a prima facie case of disparate racial discrimination in the enforcement of employee disciplinary measures under Title VII, a plaintiff must allege and prove:

> (1) that he is a member of the class protected by Title VII; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Trans. Corp.*, 988 F.2d 507, 511 (4th Cir.1993). Thus, I conclude that to succeed on their claims, plaintiffs must establish a prima facie case by producing evidence sufficient to establish that (1) they were members of a protected class; (2) they engaged in conduct that was comparable in its noxiousness to that engaged in by guests outside the protected class; and (3) that the plaintiffs were subjected to the ultimate sanction—expulsion from the motel, whereas others outside the protected class received a lesser sanction or were afforded accommodating treatment, i.e., were relocated to another room in the motel. If the plaintiff advances a prima facie case, then the innkeeper may present a non-discriminatory reason for its harsher treatment of the plaintiffs. *Hornick v. Noyes*, 708 F.2d 321, 325 n. 8 (7th Cir.1983) (applying *McDonnell Douglas* to discriminatory expulsion claim under

§ 2000a–3 against Y.W.C.A.), *cert. denied*, 465 U.S. 1031, 104 S.Ct. 1295, 79 L.Ed.2d 696 (1984). The plaintiffs must then show that the defendant's proffered reason is merely a pretext for intentional discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). A pretext exists only if the plaintiff shows both that the defendant's proffered reason is false and that discrimination was the actual reason for the harsher sanction. *Cf. Jiminez v. Mary Washington College*, 57 F.3d 369, 378 (4th Cir.) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)), *cert. denied*, — U.S. —, 116 S.Ct. 380, 133 L.Ed.2d 304 (1995).

■ So analyzed, the record is bereft of evidence from which a reasonable trier of fact could conclude that plaintiffs have established a prima facie case. Neither of the two types of evidence relied on by plaintiffs here is sufficient, singly or in combination, to avoid summary judgment. The principal evidence plaintiffs present in support of their claims is their own unsubstantiated allegations as to defendants' motivation. Such unsupported allegations are insufficient as a matter of law. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) ("[u]nsupported allegations ... do not confer talismanic immunity from Rule 56."). Furthermore, contrary to the plaintiffs' approach, it is not sufficient, to establish a prima facie case, merely to establish that some whites were also loud and unruly somewhere in the motel but were not evicted. Thus, the scant evidence presented by plaintiffs of the behavior of others—that there were revelers in the *lobby* of the motel, *about whom no guests complained, and as to whom there is no showing as to the level of their noxiousness*—is not probative of defendants' allegedly discriminatory motive in respect to their treatment of the Evanses.

■ Indeed, plaintiffs Hammond and Ward, who were not subjected to any penalty whatsoever, have indisputably failed even to allege, let alone establish for purposes of summary judgment a prima facie case. Mr. Hammond and Ms. Ward have proceeded on the novel theory that when, in connection

with the eviction of the Evanses, they were forced from the Evanses' room, they were the subject of unlawful discriminatory action. Of course, on the predicate that the Evanses were lawfully evicted, it is clear that Mr. Hammond and Ms. Ward enjoyed no right to remain in room 582. On the other hand, even on the predicate that the Evanses were not lawfully evicted, it is doubtful, to put it charitably, that the civil rights laws protect the psychic interest in "friendship" asserted here. *But see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 n. 5, 90 S.Ct. 1598, 1605 n. 5, 26 L.Ed.2d 142 (1970) (refusal to serve white because she accompanies blacks violates § 2000a) (dicta). Accordingly, because all of the plaintiffs have failed to establish a prima facie case of racially discriminatory enforcement of a motel policy regarding sanctions for noise, the defendants' motion for summary judgment on the federal claims shall be granted.[4]

## IV. CONCLUSION

For the reasons set forth, I conclude that defendants are entitled to judgment as a matter of law as to all the federal claims asserted herein. There is no diversity of citizenship jurisdiction in this case; jurisdiction over the state-law claims is clearly based on supplemental jurisdiction. Accordingly, since the federal claims have been finally resolved, I decline to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(3); *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 619–20, 98 L.Ed.2d 720 (1988); *Taylor v. Waters*, 81 F.3d 429, 437 (4th Cir.1996); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). I shall therefore dismiss those claims without prejudice. A separate order is issued herewith.

---

**4.** Even if the plaintiffs are deemed to have established a prima facie case of discrimination, however, the outcome would be the same. It is readily apparent that at the third step of the *McDonnell Douglas* shifting burdens scheme of proof, which focuses on the ultimate "straightforward" issue of whether "the plaintiff[s have] successfully demonstrated that [they were] the victim[s] of [racial] discrimination on the part of the [motel]," *Burns v. AAF–McQuay, Inc.*, 96 F.3d 728, 732 (4th Cir.1996) (citations omitted) (age discrimination in employment claim), plaintiffs have not presented sufficient evidence to sustain a verdict in their favor.