**Shahed FARASAT, Plaintiff,**

v.

**Debbie PAULIKAS, CTF Hotel Management Corporation and Marriott International, Inc., Defendants.**

**No. CIV. H—97–1488.**

United States District Court, D. Maryland.

Jan. 5, 1998.

Samuel Sperling, Sperling and Framm, Baltimore, Maryland for plaintiff.

Todd J. Horn, Venable, Baetjer and Howard, Baltimore, Maryland for defendants.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff Shahed Farasat ("Farasat") is seeking compensatory

damages and other relief under 42 U.S.C. § 1981 from his former employers and from a former supervisor. Named as defendants in this case are Marriott International, Inc. ("Marriott"), CTF Management Corporation ("CTF"), and Debbie Paulikas ("Paulikas"). Farasat, who is Iranian, asserts that his employment as a Banquet Captain at the Renaissance Harborplace Hotel (the "Hotel") was terminated because of his Middle Eastern race, in violation of § 1981.

Plaintiff's original complaint was filed in the Circuit Court for Baltimore City. Thereafter, defendants removed the case to this Court pursuant to 28 U.S.C. § 1441. The original complaint alleged claims of employment discrimination, intentional infliction of emotional distress, abusive discharge and breach of the duty of good faith. In its Memorandum and Order of June 11, 1997, this Court granted plaintiff's motion seeking leave to amend his complaint and also granted defendants' motion to dismiss all counts of the amended complaint except for Count II, which alleged a claim under § 1981.

Pursuant to a Scheduling Order entered by the Court, the parties have engaged in discovery. Presently pending in the case is a motion for summary judgment filed by defendants pursuant to Rule 56, F.R.Civ.P. It is contended by defendants that material issues of disputed fact do not exist in this case and that they are therefore entitled to summary judgment on Count II of the amended complaint, the only remaining count. The parties have submitted memoranda, deposition excerpts, affidavits and other documentary materials in support of and in opposition to the pending motion. A hearing has been held in open court. For the reasons stated herein, defendants' motion for summary judgment will be granted.

I

*Background Facts*

Plaintiff Farasat was born in Iran and was hired in February of 1988 to work as a Banquet Captain at defendants' Hotel, located in the City of Baltimore.[1] In his capacity as Banquet Captain, Farasat was responsible for overseeing the preparation for restaurant functions held at the Hotel as well as the subsequent clean-up of the restaurant facilities.[2] As Banquet Captain, plaintiff reported directly to the Banquet Manager who was responsible for the scheduling, training, counselling and disciplining of the Banquet Captain. Defendant Paulikas occupied the position of Banquet Manager from September of 1993 through April of 1994.[3] As Banquet Manager, defendant Paulikas reported to Monty Eberhardt ("Eberhardt"), who was the Food and Beverage Director. Eberhardt in turn reported to Gary Oster ("Oster"), the General Manager.

During the relevant times involved in this case, plaintiff Farasat worked on the morning shift and was required to report for duty at 6:00 a.m. Farasat acknowledged during his deposition that he was a heavy sleeper and that he had difficulty waking up early in the morning because he did not hear his alarm clock. He was consistently tardy in reporting for work.

After defendant Paulikas became Banquet Manager in September of 1993, she counseled plaintiff about his tardiness and disciplined him on several occasions. Plaintiff was informed by her that, if he did not improve, he would face further discipline and the possible termination of his employment. A written warning to plaintiff was issued by Paulikas in an "Employee Progress Sheet" dated October 26, 1993. This document indicated that plaintiff had been tardy on four separate occasions from October 23 through October 26, 1993. On those four mornings, plaintiff was late 23 minutes, 1 hour and 6 minutes, 41 minutes and 44 minutes, respectively.

A second written warning was issued to plaintiff in an Employee Progress Sheet

---

1. It is not disputed in this case that Marriott and CTF were jointly plaintiff's employer and have properly been named as defendants in this case.

2. In October of 1988, plaintiff had resigned from his position at the Hotel and had been employed in Washington, D.C. Thereafter, he was rehired

some six weeks later, again as a Banquet Captain.

3. Prior to September of 1993, defendant Paulikas was an Assistant Banquet Manager.

dated November 8, 1993. This Employee Progress Sheet, which was signed by Tony Bonano ("Bonano"), an Assistant Banquet Manager, indicated that plaintiff had been tardy on November 3, 4 and 5, 1993.

At a meeting held On November 18, 1993 and attended by plaintiff, Oster, Eberhardt and Paulikas, plaintiff's tardiness and other matters relating to his work performance were addressed. At that meeting, Eberhardt told plaintiff that he could not tolerate plaintiff's latenesses and advised plaintiff that he needed to rectify this problem. However, plaintiff continued thereafter to be tardy in reporting for work. On November 30 and also on December 14, plaintiff was 29 minutes late for work. On ten different occasions between January 1 and March 6, 1994, plaintiff was also tardy. On four of these occasions, he was at least 55 minutes late for work and on three of these occasions he was at least 30 minutes late.

When not working at the hotel, plaintiff played in a musical group which performed Persian music. Plaintiff's group planned to give a concert on March 13, 1994, a Sunday and a day on which plaintiff was not scheduled to work. In anticipation of the concert, plaintiff prepared an evaluation form to be completed by members of the audience attending the concert. Needing copies of the form for distribution at the concert, plaintiff entered the Hotel's Executive Offices without permission, used the Hotel's photocopy machine and made approximately twenty copies of this form. Lacking a key, plaintiff apparently gained access to the Executive Offices by waiting for some one to walk out and then entering while the door was still open. While operating the photocopy machine, plaintiff was approached by Assistant General Manager Catherine Mrowic, who reported the incident to Eberhardt.

As plaintiff conceded in his deposition, Hotel policy does not permit employees to use Hotel equipment for personal purposes. Moreover, plaintiff acknowledged that employees were prohibited from entering a secured area like the Hotel's Executive Offices unless they had authorization to do so.

Between March 17 and March 25, 1994, plaintiff was on vacation. When he reported to work on March 25, Eberhardt notified him that pending a review of his personnel file by General Manager Oster, plaintiff was being suspended because of his unauthorized entry into the Executive Offices. Following such review, Oster decided to terminate plaintiff's employment, and Farasat was discharged on March 27, 1994. Several days later, plaintiff met with Oster and was told that his termination was based primarily on his tardiness and also on his unauthorized use of the photocopy machine in the Hotel's Executive Offices.

According to plaintiff, defendant Paulikas often called him a "camel jockey" and a "Goddamned Arab." Plaintiff concedes that these terms were often used in a joking manner and that he and the previous Banquet Manager occasionally used similar derogatory phrases while joking in their conversations. Plaintiff further contends that some four or five months after his discharge, he was told by Ken Hall, a former hotel employee, that Hall had overheard Eberhardt talking to Bonano and Paulikas after plaintiff was fired and stating that they had "gotten rid of the camel jockey."

Plaintiff filed his complaint in the Circuit Court for Baltimore City on March 24, 1997. Following removal of this action to this Court, leave was granted to plaintiff to file an amended complaint. By way of its Memorandum and Order of June 11, 1997, all counts of the amended complaint were dismissed except for Count II which has alleged a claim under § 1981. It is that Count which defendants have here challenged in their motion for summary judgment.

## II

### Summary Judgment Principles

It is well established that a defendant moving for summary judgment bears the burden of showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be dis-

charged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

One of the purposes of Rule 56 of the Federal Rules of Civil Procedure is to require a plaintiff, in advance of trial and after a motion for summary judgment has been filed and properly supported, to come forward with some minimal facts to show that the defendant may be liable under the claims alleged. *See* F.R.Civ.P. 56(e). If the non-moving party "fail[s] to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Catrett,* 477 U.S. at 323, 106 S.Ct. 2548.

While the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion, *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), "when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely.' " *Barwick,* 736 F.2d at 958–59 (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967), *cert. denied,* 390 U.S. 959, 88 S.Ct. 1039, 19 L.Ed.2d 1153 (1968)). Moreover, only disputed issues of *material* fact, determined by reference to the applicable substantive law, will preclude the entry of summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In the absence of the necessary minimal showing by the plaintiff that the defendant may be liable under the claims alleged, the defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. *See Catrett,* 477

U.S. at 323–24, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. Indeed, the Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have "an affirmative obligation . . . to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (quoting *Catrett,* 477 U.S. at 323–24, 106 S.Ct. 2548).

Applying these principles to the facts of record here, this Court has concluded that defendants' motion for summary judgment must be granted as to the one remaining Count of the amended complaint.

### III

### *Discussion*

42 U.S.C. § 1981 protects all persons from racially motivated deprivations of certain enumerated rights, whether committed under color of state law or by private individuals. Included among these rights is the right to be free from racial discrimination in private employment. *See, e.g., Johnson v. Rwy. Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Courts considering issues similar to the ones presented in this case have broadly construed the term "race" and have extended the protection of § 1981 to any person suffering discrimination on the basis of his or her ethnic ancestry or background. *Cuello Suarez v. Puerto Rico Elec. Power Auth.,* 798 F.Supp. 876, 890–91 (D.P.R.1992), *aff'd,* 988 F.2d 275 (1st Cir.1993).

Plaintiff Farasat has the burden in this § 1981 civil action to prove defendants' discriminatory motive and intent. *Lewis v. Bethlehem Steel Corp.,* 440 F.Supp. 949, 965 (D.Md.1977). As this Court noted in *Robertson v. Maryland State Dept. of Personnel,* 481 F.Supp. 108, 112 (D.Md.1978), a plaintiff suing under § 1981 must prove a deprivation of an enumerated right which, under similar circumstances, would have been accorded to a person of a different race and also that such deprivation was intentional and motivated by racial prejudice. To prevail on his claim then, plaintiff Farasat must prove that but for defendants' discriminatory motive he

would not have been discharged. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 458 (4th Cir.1989). Both in a suit brought under Title VII and in one brought under § 1981, a plaintiff may meet his burden under ordinary principles of proof using direct or indirect evidence or, in the alternative, under the judicially created proof scheme established by *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It is well established that the *McDonnell–Douglas* scheme of proof applies in a case like this one brought under § 1981. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Gairola v. Commonwealth of Virginia Dept. of Gen. Serv.,* 753 F.2d 1281, 1285–86 (4th Cir.1985).

It is first apparent from the record here that there is no genuine issue of material fact in this case under "an ordinary method of proof" analysis. Most of the allegedly disputed facts relied upon by plaintiff are not material facts. From its review of the record here, this Court concludes that plaintiff has produced neither direct nor indirect evidence of race discrimination on the part of defendants. Thus, if plaintiff is to prevail in this case, he must rely upon the *McDonnell–Douglas* rationale.

Under the *McDonnell–Douglas* proof scheme, plaintiff must initially establish by a preponderance of the evidence a *prima facie* case of employment discrimination. In order to make out a *prima facie* case of race discrimination, plaintiff must establish: (1) that he is a member of a protected class; (2) that he was discharged; (3) that at the time of his discharge he was performing his job at a level that met his employers' legitimate expectations; and (4) that following his discharge he was replaced by someone of comparable qualifications outside the protected class.[4] *Williams,* 871 F.2d at 455. The establishment of a *prima facie* case eliminates the most common nondiscriminatory reason for a discharge, namely that the plaintiff was not qualified for the job. *Texas Dept. of*

*Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

If the plaintiff has established a *prima facie* case of employment discrimination, then the defendant has the burden of articulating a legitimate, nondiscriminatory reason for terminating plaintiff's employment. *O'Connor v. Consolidated Coin Caterers Corp.,* 84 F.3d 718, 719 (4th Cir.1996). The articulation of a legitimate nondiscriminatory reason for a plaintiff's discharge rebuts the inference of discrimination raised by plaintiff's proof of a *prima facie* case. At that point, the ultimate burden shifts back to the plaintiff to prove by a preponderance of the evidence that the proffered explanation was a pretext and that the defendant intentionally discriminated against him on the basis of his race. *Tuck v. Henkel Corp.,* 973 F.2d 371, 375 (4th Cir.1992). Accordingly, to defeat defendants' motion for summary judgment at the third stage of the *McDonnell–Douglas* proof scheme, plaintiff Farasat must here produce evidence from which a reasonable jury could infer that defendants' actions were based upon his race, or that defendants proffered legitimate nondiscriminatory reasons for the adverse employment action as a pretext for unlawful discrimination. *Id.*

■ Applying these principles to the facts of record here, this Court finds and concludes that plaintiff has failed to establish a *prima facie* case of race discrimination. Defendants have not here argued that plaintiff has not met the first, second and fourth *McDonnell–Douglas* requirements. However, defendants do assert that plaintiff has not met his burden of establishing a *prima facie* case because he has not come forward with material evidence indicating that at the time of his discharge he was performing his job at a level which met his employers' legitimate expectations. This Court would agree.

As shown by the record here, plaintiff was consistently tardy in reporting for work. His assigned duty was to act as Banquet Manager at the restaurant's morning shift, and he was required to report for work each morn-

---

4. In some cases, the fourth element of the test has been described as a requirement that plaintiff prove that after his dismissal the position remained open and his employer continued to

seek applicants from persons of plaintiff's qualifications. *Smith v. University of North Carolina,* 632 F.2d 316, 332 (4th Cir.1980); *Gairola,* 753 F.2d at 1288.

ing at 6:00 a.m. Beginning in October of 1993 and continuing through March of 1994, plaintiff was continually late for work. Despite written warnings on October 26 and on November 8, 1993, and counseling by defendant Paulikas, plaintiff did not change his ways. A meeting was held on November 18, 1993, at which time plaintiff was told by General Manager Oster and other supervisors that his latenesses would not be tolerated. Nevertheless, there were two more occasions in November and December of 1993 when he was late for work, and ten more occasions between January 1 and March 6, 1994 when he was also tardy. When plaintiff reported for work each morning, he was required to punch a time clock. All of his many latenesses are well documented by evidence of record.

Moreover, plaintiff violated Hotel policy when he entered the Hotel's locked Executive Offices [5] on a Sunday without permission and used a photocopying machine in connection with a personal matter.[6] Plaintiff was first suspended because of his unauthorized entry into the Executive Offices. Thereafter, he was fired following a review of his personnel file by General Manager Oster who noted plaintiff's persistent tardiness. Under these circumstances, this Court concludes that plaintiff was not at the time of his discharge performing his job at a level which met his employer's legitimate expectations.

Plaintiff argues that the Hotel records which detailed his latenesses are inaccurate because on occasion he worked "off the clock." According to plaintiff, he often came to work without punching the clock in an effort to reduce expenses in his Department. Other than his own conclusory assertions, there is no documentation of the dates when or the number of hours when plaintiff worked "off the clock." [7] Moreover, defendants' evidence of Farasat's persistent tardiness is confirmed by his own statements. At his deposition, plaintiff admitted that he had

trouble getting up in the morning because he was a "heavy sleeper," that he "had a problem with tardiness" and that this "weakness" caused him to be "late for work every now and then." (Farasat Dep. at 111–12, 231–268). In view of substantial evidence to the contrary, plaintiff's conclusory assertions that the Hotel's records were inaccurate cannot be accepted as proof that he was at the time of his discharge performing his job at a level which met his employer's reasonable expectations. *See Gairola*, 753 F.2d at 1288; *Williams*, 871 F.2d at 456; *Cross v. Bally's Health & Tennis Corp.*, 945 F.Supp. 883, 887 (D.Md.1996).

Plaintiff also disputes defendants' assessment of his work habits as substandard. He contends that despite his tardiness, he worked hard and well at his job, that his work performance was valuable and that he accordingly met his employer's legitimate expectations. However, the self-perception of his qualifications by a plaintiff in a suit of this sort is irrelevant. What matters is "the perception of the decision-maker...." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980); *Pfeifer v. Lever Bros. Co.*, 693 F.Supp. 358, 365 (D.Md.1987), *aff'd*, 850 F.2d 689 (4th Cir.1988).

It is of little consequence that Banquet Managers before defendant Paulikas may have tolerated plaintiff's tardiness. In view of the well documented record of Farasat's persistent latenesses, his employer was entirely justified in terminating his employment when he did not change his ways after warnings and counselling. As Judge Williams of this Court held in *Afande v. National Lutheran Home for the Aged*, 868 F.Supp. 795, 801 (D.Md.1994), *aff'd mem.*, 69 F.3d 532 (4th Cir.1995), an employer does not act in a discriminatory manner when, after warnings, it disciplines and ultimately discharges an employee who has had problems with attendance and punctuality.

---

**5.** The Hotel keeps its personnel and financial records and its legal documents in its Executive Offices.

**6.** Plaintiff admitted that he knew that employees are not allowed in the Hotel's Executive Offices on Sunday and that it was the policy of the Hotel

that employees are not to use Hotel equipment for personal purposes. (Farasat Dep. at 200–01).

**7.** Counsel for plaintiff concedes that plaintiff "cannot detail the precise dates" when he worked "off the clock" in order to save the Hotel money. (Opp'n Br. at 7 n. 4).

■ Even assuming, *arguendo,* that the Court were to find that plaintiff had made out a *prima facie* case of race discrimination on the present record, summary judgment in favor of the defendants under Count II of the amended complaint would still be granted. Defendants have in this case articulated legitimate, nondiscriminatory reasons for the termination of plaintiff's employment, and plaintiff has not presented material evidence which would raise a triable issue as to pretext.

In order to show that defendants' proffered reasons for plaintiff's discharge were pretextual, plaintiff must produce evidence indicating that, as between his race and defendants' explanation, race was the more likely reason for his dismissal. *Tuck,* 973 F.2d at 375. Alternatively, plaintiff may point to evidence in the record showing that defendants' explanation is "unworthy of credence." *Id.*

When all the evidence of record is examined in a light favorable to the plaintiff, this Court concludes that plaintiff has not come forward with even minimal facts to support his contention that the nondiscriminatory explanation advanced by defendants was pretextual. Plaintiff has not in this case shown either that defendants' proffered reasons for firing him were false or that race discrimination was the actual reason for the adverse employment action. *See Evans v. Holiday Inns, Inc.,* 951 F.Supp. 85, 89 (D.Md.1997). Evidence does not exist in this record indicating that "but for" defendants' discriminatory motive to discriminate against him on the basis of his race, he would not have been discharged. *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014 (4th Cir.1983).

In arguing that there is evidence of defendants' discriminatory intent in the record here, plaintiff relies on derogatory remarks made from time to time by defendant Paulikas. According to plaintiff, Paulikas referred to him as a "camel jockey" and a "goddamned Arab" between ten and twenty times (Farasat Dep. at 179–85). However, plaintiff acknowledged that with respect to the phrase "goddamn Arab," Paulikas used the term "jokingly," "trying to act friendly" and in a manner "like she didn't mean it." *Id.* at 181, 188. Plaintiff further stated that he himself may have used the term "camel jockey" or "Arab" in a joking manner in conversation with Paulikas, although he could not specifically recall doing so. *Id.* at 188.[8]

The statements relied upon hardly constitute material evidence upon which a reasonable jury could rely in finding that defendants intentionally discriminated against plaintiff on the basis of his race. The phrases in question were spoken in a joking manner by various employees (including Middle Easterners) as well as by supervisors. In *Amirmokri v. Baltimore Gas and Elec. Co.,* 60 F.3d 1126 (4th Cir.1995), derogatory comments which were made by the supervisor and co-workers of a plaintiff of Iranian national origin and which were similar[9] to those relied upon by Farasat in this case were held by the Fourth Circuit to be insufficient to constitute proof that an adverse employment decision was racially discriminatory. *Id.* at 1130.

■ Moreover, the ultimate decision to discharge plaintiff was made by Oster, the General Manager. There is no evidence that he ever made similar derogatory remarks suggesting a discriminatory animus toward plaintiff based on his race. *See Henson v. Liggett Group, Inc.,* 61 F.3d 270, 276 (4th Cir.1995); *EEOC v. Clay Printing Co.,* 955 F.2d 936, 941–42 (4th Cir.1992). Indeed, at his deposition, plaintiff admitted that he knew of no facts which would indicate that Oster had an intent to discriminate against Middle Easterners. (Farasat Dep. at 167–68). Defendant Paulikas did not make the ultimate decision to terminate plaintiff's em-

---

8. The conversation which plaintiff had with Ken Hall in August or September of 1997 hardly constitutes material evidence of defendants' discriminatory intent. Hall was a Hotel employee who had been fired after plaintiff's discharge. His hearsay statement was that after plaintiff's discharge he overheard Eberhardt referring to plaintiff as a "camel jockey."

9. In *Amirmokri,* plaintiff's supervisor and other co-workers called him names like "the local terrorist," a "camel jockey," "the ayatollah" and "the Emir of Waldorf." 60 F.3d at 1129, 1131.

ployment and the derogatory remarks attributed to her do not constitute proof of a discriminatory motive on the part of Oster. Stray remarks by employees do not demonstrate an employer's intent to discriminate, even when the decision-maker consults with those employees in reaching his decision. *Vakharia v. Little Co. of Mary Hosp.*, 917 F.Supp. 1282, 1295 (N.D.Ill.1996).

 Relying on *Shirkey v. Eastwind Community Dev. Corp.*, 941 F.Supp. 567, 573 (D.Md.1996), plaintiff contends that he is entitled to a recovery from defendant Paulikas because of her discriminatory interference with the exercise by him of his right to make a contract of employment. The facts of record here do not support this contention. Paulikas did in fact bring to the attention of Oster some of (but by no means all of) the facts which formed the basis for plaintiff's discharge. But there has been no showing that Paulikas falsified the record of plaintiff's numerous latenesses which were contained in his personnel file and which were relied upon by Oster in firing plaintiff. A similar claim was rejected by the Court in *Wilson v. Stroh Companies, Inc.*, 952 F.2d 942 (6th Cir.1992). In that case, the plaintiff had argued that his supervisor's racial prejudice should be imputed to the decision-makers because his supervisor brought to their attention the facts that formed the basis for his discharge. In rejecting that argument, the Court determined that "there is absolutely no support in the record for [plaintiff's] contention that the [decision-makers] relied on a false record created by [his supervisor] to discharge him." *Id.* at 946.

Plaintiff also argues that he received disparate treatment because other Hotel employees were often late but were not subjected to the extreme disciplinary action imposed on him. But there has been no showing by plaintiff that there was any other Hotel employee who was as repeatedly and persistently late for work as was plaintiff and who continued to be habitually tardy after warnings and counselling.[10]

On the record here, this Court concludes that evidence of discriminatory motive on the part of any one of the defendants does not exist. Plaintiff has failed to produce evidence "'of a stated purpose to discriminate . . . of sufficient probative force to reflect a genuine issue of material fact.'" *Clay Printing*, 955 F.2d at 941 (quoting *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988)). Accordingly, judgment as a matter of law will be entered in favor of all three defendants.

### IV

#### *Conclusion*

For all the reasons stated, this Court has concluded that defendants' motion for summary judgment should be granted as to the one remaining count of the amended complaint. An appropriate Order will be entered by the Court.

---

**10.** Plaintiff likewise could not identify any other employee who had entered the Hotel's Executive Offices without authorization, who used the Ho-

tel's photocopying machine for personal purposes and who was not fired. (Farasat Dep. at 275).