Marcus **SHERMAN**, Plaintiff

v.

**MARRIOTT HOTEL SERVICES, INC.**, Defendant

**No. CIV. AMD 03–2894.**

United States District Court,
D. Maryland.

May 11, 2004.

---

Lauren A. Greenberg, Crispin and Associates PLLC, Washington, DC, for Plaintiff.

Todd James Horn, Venable, Baetjer and Howard LLP, Baltimore, MD, Jeffrey P. Ayres, Venable, Baetjer and Howard LLP, Towson, MD, for Defendant.

## MEMORANDUM OPINION

DAVIS, District Judge.

Plaintiff, Marcus Sherman, who is African–American, was locked out of his room at a Baltimore hotel while attending a professional conference in March 2003 when his room key became demagnetized. Unhappy with the treatment he received from hotel employees in obtaining a new key (and in later complaining about it), he filed this action for damages and injunctive relief in the United States District Court for the District of Columbia pursuant to 42 U.S.C. § 1981 and Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a–3 against Marriott Hotel Services, Inc. (who by agreement of the parties was substituted for the original defendant, Marriott International, Incorporated). That court transferred the case to this district. Discovery has concluded and now pending is the defendant's motion for summary judgment. No hearing is needed. For the reasons set forth below, I shall grant the motion for summary judgment.

### I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *See id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Shealy v. Winston*, 929 F.2d 1009,

1012 (4th Cir.1991). Of course, the facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *See Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987).

## II.

■ Despite plaintiff's insistence to the contrary, I regard the material facts as largely undisputed. In any event, viewed in the light most favorable to plaintiff, the facts are as follows.[1]

Plaintiff attended a professional conference at the hotel from on or about March 5 through March 7, 2003. On the evening of March 5, plaintiff worked out in the hotel gym until after 11:00 p.m. When he returned to his room from the gym, his electronic key card had become demagnitized and would not unlock the door. Plaintiff, dressed in athletic garb and sweating from his workout, went to the front desk to obtain assistance and/or a new key. At the front desk, plaintiff interacted with a white employee, Darren Kerr.

It is undisputed that defendant's lock-out policy requires that a guest display identification matching the name in hotel records in order to obtain a new key. Under circumstances such as those facing plaintiff on March 5, in which the guest's identification is in his (locked) room, the policy requires that the guest be escorted to the room by hotel security to obtain the identification. (The parties dispute the existence of an informal, unwritten "excep-tion" to the written lock-out policy, but I regard that dispute as immaterial to the issues in this case.)

According to plaintiff, the interaction between plaintiff and Kerr at the front desk was not pleasant. Plaintiff, who alleges that it took up to 19 minutes or so for Kerr to obtain assistance from a security officer to escort plaintiff to his room, regards certain statements of Kerr ("You could have come in off the street ....") to have manifested a racially insensitive, if not racially discriminatory, attitude. In any event, an African–American security officer eventually escorted plaintiff to his room. Kerr had apparently instructed plaintiff to return to the front desk after he had produced identification to the security officer to retrieve a replacement key; however, the security officer left plaintiff in his room and returned, himself, to the front desk to retrieve a new key for plaintiff. The replacement key was delivered to plaintiff's room.

Indisputably, plaintiff was agitated and annoyed by what he perceived as the cumbersome and allegedly lengthy process he had to go through to obtain a replacement key. He believes that the circumstances of his appearance at the front desk late at night, sweating and dressed in workout attire, should have compelled the conclusion on the part of hotel employees that, clearly, he was a guest coming from the hotel gym and that, consequently, he should have simply been given a replacement key without further ado. Plaintiff encountered one or more of his professional colleagues or acquaintances in the hotel lobby as he awaited the arrival of the security officer, and felt some embarrassment from this encounter. In addition, as mentioned above, plaintiff feels that Kerr's

---

1. Plaintiff devotes significant attention to (1) his own subjective feelings of having been discriminated against, and (2) the opinions of his colleagues, including his supervisor, that they believe he was discriminated against. These alleged "facts" are not material to the issues presented by defendant's motion.

interaction with him reflected racial animus.

Apparently, plaintiff's decision to sue for damages based on the March 5 incident was made as a result of what he learned the next night during dinner with some of his professional colleagues. Specifically, plaintiff learned that a white female professional acquaintance had checked into the hotel the day before plaintiff checked in, i.e., on March 4, 2003. Later on March 4, that colleague had locked herself out of her room. When she went to the front desk for assistance, the same front desk employee who had checked her in immediately reissued an additional key to her, without demanding identification, and in violation of the hotel's written lock-out policy.

Upon learning of his colleague's more favorable treatment, plaintiff (together with his supervisor, a white female, who also attended the conference) met with the hotel manager. Eventually, the hotel manager apologized to plaintiff in writing and provided plaintiff with two hundred dollars in gift certificates. Nevertheless, plaintiff was entirely unsatisfied with the hotel's response to his complaint. Indeed, claiming a "right to complain," plaintiff purports to assert a distinct claim under 42 U.S.C. § 1981, based on the alleged discriminatory handling of his complaint of his discriminatory lock-out experience. Specifically, plaintiff claims that in the meeting involving himself and his supervisor with the manager, the manager essentially ignored plaintiff and attempted to discuss the complaint entirely with plaintiff's supervisor rather than with plaintiff, that the manager "reached across" plaintiff in attempting to shake the supervisor's hand (rather than the plaintiff's hand) as the meeting commenced, and that the manager held the meeting in a public hallway of the hotel, despite plaintiff's request that the meeting be held "in private."

## III.

 In *Callwood v. Dave & Buster's, Inc.,* 98 F.Supp.2d 694 (D.Md.2000), I explicated the contours of 42 U.S.C. § 1981, as follows:

Protection against racial discrimination in the making and enforcement of private contracts is provided by 42 U.S.C. § 1981. In response to the Supreme Court's holding in *Patterson v. McLean Credit Union,* 491 U.S. 164, 177, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), that section 1981's protection "did not extend to conduct occurring after the contractual relationship had been established, including breach of the terms of the contract," *Evans v. Holiday Inns, Inc.,* 951 F.Supp. 85, 88 (D.Md.1997)(citing *Patterson* ) (internal quotations omitted), Congress amended section 1981 to expand its reach to the "performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.' " Civil Rights Act of 1991, Pub.L. No. 102–166, § 101 (codified as 42 U.S.C. § 1981(b)); *see also Bobbitt v. Rage, Inc.,* 19 F.Supp.2d 512, 516 (W.D.N.C.1998) (citing *Beardsley v. Webb,* 30 F.3d 524, 527 (4th Cir.1994)); *Evans,* 951 F.Supp. at 88.

The legislative history of the Civil Rights Act of 1991 reveals that in amending section 1981 Congress reaffirmed the view that section 1981 is "a critically important tool used to strike down racially discriminatory practices in a broad variety of contexts." H. Rep. No. 102–40, pt. II, at 36 (1991), *reprinted in* 1991 U.S.C.C.A.N. 694, 729 (Report of House Judiciary Committee on Civil Rights Act of 1991). Pursuant to its expansive view of section 1981, Congress intended the amended language in section 1981—in particular, the use of the

phrase "benefits, privileges, terms and conditions"—to be an "illustrative rather than exhaustive" list of the protected facets of the contractual relationship. *See* H. Rep. No. 102–40, pt. I, at 92 (1991), *reprinted in* 1991 U.S.C.C.AN. 549, 630 (Report of House Education and Labor Committee on Civil Rights Act of 1991); H. Rep. No. 102–40, pt. II, at 37 (1991), *reprinted in* 1991 U.S.C.C.AN. 694, 730–31 (Report of House Judiciary Committee on Civil Rights Act of 1991).

The illustrative language was "intend[ed] ... to bar all race discrimination in contractual relations." H. Rep. No. 102–40, pt. I, at 92; H. Rep. No. 102–40, pt. II, at 37; *cf. Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)(finding that the use, in section 703 of Title VII of the Civil Rights Act of 1964, of the phrase "benefits, privileges, terms and conditions of the contractual relationship" "evinces a congressional intent to strike at the entire spectrum of disparate treatment")).

Accordingly, as amended, section 1981 provides protection against discriminatory conduct occurring during and after the formation of a contract ....

*Id.* at 703 (footnote omitted).

■ In general, the elements of a claim under section 1981 largely track the elements of a claim for race discrimination in employment under Title VII of the Civil Rights Act of 1964. *See Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1285 (4th Cir.1985); *Abasiekong v. City of Shelby,* 744 F.2d 1055, 1058 (4th Cir.1984). In particular, the well-known burden-shifting scheme established for Title VII claims by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), is generally appropriate whenever a claim requiring proof of intentional discrimination is based, as in this case, on indirect or circumstantial evidence. *See Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1136 (4th Cir.1988). *See also Evans v. Holiday Inns, Inc.,* 951 F.Supp. 85, 89 (D.Md.1997)(citing *Cook v. CSX Trans. Corp.,* 988 F.2d 507, 511 (4th Cir.1993)).

■ I have observed that in formulating the requirements of a prima facie case, courts have used as their touchstone, flexibility. In *Callwood,* for example, involving alleged discriminatory treatment afforded restaurant patrons, I focused on what I regarded as manifest differences between the "largely itinerant nature of the clientele of ... retail food service enterprises" and the employment context, and I noted that "the interactions of a highly mobile public with hostesses, waitpersons and managers are necessarily ad hoc and transient [and] are almost never with higher-ranking personnel of the enterprise." *Callwood,* 98 F.Supp.2d at 706. In contrast, employment decisions tend to be "regularized and periodic, ... made by supervisory personnel, and ... almost always documented." *Id.* Thus, I fashioned elements of a prima facie case more suited to the exigencies of the restaurant/retail trade.[2] On the other hand, in *Evans,* I analogized the case (in which hotel guests

---

2. I applied the following test for a prima facie case:

[P]laintiff must show the following: (1) they are members of a protected class; (2) they made themselves available to receive

were evicted) to discipline in the employment context. *See* 951 F.Supp. at 89.

In this case, the parties disagree over the proper elements of plaintiff's prima facie case of discrimination. I agree with defendant, however, that I need not resolve this issue because, as a matter of law, plaintiff has not been denied "the enjoyment of all benefits, privileges, terms, and conditions of [a] contractual relationship" for which he may seek a remedy under section 1981.

As a matter of law, plaintiff enjoyed the benefits and privileges, on the very same terms and conditions, of the contractual relationship offered by the defendant to any prospective guest. As a matter of law, the fact that an individual employee of the hotel deviated from the undisputed policy of the hotel in respect to lock-outs (by reissuing a key to a guest who had recently checked in and who was recognized by the employee) is not remotely probative of a claim of race discrimination based on proof that such an exception or deviation from the policy *was not made* (by a different hotel employee) when *plaintiff* was locked out of his room. However unpleasant plaintiff's interactions with hotel staff

on the night of his lock-out might have been, the Fourth Circuit has cautioned against indulging the kind of claim that is being asserted here. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir.)("Law does not blindly ascribe to race all personal conflicts between individuals of different races."), *cert. denied,* 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 125 (2000).

■ In short, no reasonable juror properly instructed on the law could reasonably conclude that application of a facially neutral lock-out policy, which requires that a guest be escorted to his room for identification, as applied to plaintiff on March 5, 2003, constituted an act of racial discrimination prohibited by section 1981. Moreover, this conclusion is not remotely called into question by undisputed proof that on some occasions, whether pursuant to an unofficial or informal "policy exception," or through the ad hoc and episodic deviations from the policy by individual employees, which common sense suggests are virtually certain to occur, some guests are provided replacement keys *without* displaying identification.[3] Accordingly, defendant is entitled to summary judgment as to the section 1981 claim.[4]

---

and pay for services ordinarily provided by the defendant to all members of the public in the manner in which they are ordinarily provided; and (3) they did not enjoy the privileges and benefits of the contracted for experience under factual circumstances which rationally support an inference of unlawful discrimination in that (a) they were deprived of services while similarly situated persons outside the protected class were not deprived of those services, and/or (b) they received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

98 F.Supp.2d at 707.

3. Plaintiff devotes attention to whether or not there existed an unwritten "exception" to the lock-out policy, contending that there is no proof of such an "exception," and therefore suggests that this counts as a genuine dispute

of material fact. I disagree. Regardless of whether any such "exception" existed, common sense reveals that exceptions to such a policy are bound to be made. For example, imagine a guest of several days' tenure who is well known on sight to a member of the housekeeping staff. The guest steps out of her room in bedclothes to retrieve a morning paper and allows the door to slam closed behind her. She attracts the attention of the housekeeper, who immediately recognizes her as the guest to whom she has spoken, brought towels, etc., for several days. No sensible adult would ever think that it would be appropriate for the housekeeper to refuse the guest's immediate admittance to her room under these circumstances.

4. To the extent plaintiff claims he has a "right to complain," *see* Pl's Memorandum at 35, certainly as doubtful a proposition of federal

### B.

 Section 2000a, Title II of the Civil Rights Act, creates a private cause of action to remedy discrimination in public accommodations affecting interstate commerce. Only injunctive and declaratory relief (and attorneys' fees) may be awarded to a prevailing plaintiff. *See Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The gravamen of a claim is the denial to plaintiff of full and equal enjoyment of the services offered by the establishment. *See* 42 U.S.C. § 2000a; *Wooten v. Moore,* 400 F.2d 239, 241 (4th Cir.), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *United States v. DeRosier,* 473 F.2d 749 (5th Cir.1973). As to § 2000a, plaintiff's claim fails not only for the reasons stated above, but for the additional reason that plaintiff would not be entitled to prospective injunctive relief under any circumstances.

### VI.

For the reasons set forth above, I shall grant defendant's motion for summary judgment. An order follows.

### ORDER

For the reasons set forth in the foregoing Memorandum Opinion, it is this 11th day of May, 2004, by the United States District Court for the District of Maryland ORDERED

(1) That the defendant's motion for summary judgment is GRANTED and JUDGMENT IS HEREBY ENTERED IN FAVOR OF DEFENDANT AGAINST PLAINTIFF; and it is further ORDERED

(2) That the Clerk shall CLOSE THIS CASE.

---

law as might be imagined, for the discriminatory deprivation of which he may bring an independent claim under § 1981, I likewise conclude as a matter of law that no reasonable jury may conclude that he was discriminated against.